IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DIRECT GENERAL INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | FILE NO. 1:23-cv-03491-ELR |
| | ) | |
| CHRISTOPHER EVANS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## D. MAX HIRSH'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

On July 27, 2018, 6-year-old Andrew Evans died in a wreck caused by

Shannon Hartsfield, an insured of Direct General Insurance Company ("DGIC").

Andrew's family gave DGIC an opportunity to settle the wrongful death claim, but

DGIC rejected it.  Shannon died intestate in the same wreck, so Andrew's family

had to form an estate for Shannon before filing suit for Andrew's wrongful death.

D. Max Hirsh was named administrator of Shannon's estate, making him the

defendant in the wrongful death suit.  After a $14 million judgment was entered

against Mr. Hirsh, DGIC initiated this action against Mr. Hirsh.  Mr. Hirsh

counterclaimed for, *inter alia*, DGIC's negligent or bad-faith failure to settle.

Purusant to Rule 56, Mr. Hirsh respectfully moves for partial summary judgment

on several discrete issues particularly susceptible to rulings as a matter of law.

Mr. Hirsh seeks partial summary judgment as follows:

1. The August 8, 2018, time-limited demand to settle the claim for the wrongful death of Andrew Evans was objectively "capable of acceptance" by DGIC.  (Exhibit A)  In other words, DGIC had an opportunity to settle for policy limits of $25,000, thereby avoiding the $14 million judgment.

2. DGIC's September 6, 2018, response to the time-limited demand for policy limits was a counteroffer and a rejection.  (Exhibit H)

3. DGIC's Eleventh Affirmative Defense, that it relied on outside counsel in rejecting the time-limited demand, fails as a matter of law. (Doc 36, p.5)  The undisputed facts show that DGIC decided to reject the demand with advice from its in-house counsel before even retaining outside counsel.

4. DGIC's Sixth Affirmative Defense, "set up", fails as a matter of law. (Doc 36, p.3)  The demand was reasonable, objectively capable of acceptance and not designed to trip up the insurer.

5. DGIC's Ninth Affirmative Defense, "estoppel and/or unclean hands", fails as a matter of law.  (Doc 36, p.4)  It's a frivolous defense.

6. DGIC's Thirteenth Affirmative Defense, "set off", fails as a matter of law.  (Doc 36, p.5)  It's a frivolous defense.

## I.    STATEMENT OF FACTS

### A.    DGIC's Insured Causes a Fatal Accident.

DGIC sold Shannon Hartsfield an auto policy with bodily injury liability limits of $25,000 per person and $50,000 in the aggregate.  (Doc 1-1 p.1)  On July 27, 2018, Ms. Hartsfield was driving with three passengers, including 6-year-old Andrew Evans, when she collided with a vehicle being driven by Shannon Justus. (Doc 36, pp. 5-6, ¶¶1-2 and Exhibit A, p.11)  Ms. Hartsfield and all three passengers were killed.  (Doc 36, p. 6, ¶4)  The three occupants in the Justus's vehicle reported injuries, but the extent was not clear.  (Exhibit B, 43:1-17)

### B.    DGIC Determines Its Insured to be at Fault.

DGIC assigned adjustor Jeanna Matoy to the claim.  (Exhibit B, 145:9-13)  By August 2, 2018, adjustor Matoy's investigation concluded three things:

- DGIC's insured was covered for the wreck (Exhibit B, 146:2-11);
- DGIC's insured was clearly at fault (Exhibit B, 146:17 – 147:7); and
- DGIC's insured's liability exceeded policy limits (Exhibit B, 147:15-19).

### C.    DGIC Receives a Time-Limited Demand and Decides to Respond by Convening a Global Settlement Conference.

On August 9, 2018, a time-limited demand was sent to DGIC by attorney Rory Chumley, who represented Andrew's father, Christopher Evans.   (Exhibit A) Matoy received the time-limited demand.   (Exhibit B, 150:7-14)  The demand was

to settle the claim for Andrew's wrongful death.[1]  Matoy elevated the demand to

her Regional Claims Leader, Andrew Quackenbush.  (Exhibit B, 41:4-13; 59:3-19;

152:6-17; and Exhibit E, 8:13-20 and 17:9-14)

Quackenbush consulted in-house counsel Ellen Greer and suggested that

DGIC "should look at some sort of Global Settlement Conference" and that he

"[w]ould appreciate any guidance you can provide."  (Exhibit F, p.2, bottom)  A

Global Settlement Conference ("GSC") was DGIC's standard procedure to handle

claims like the one at issue.  (Exhibit C, 25:9-14)

Greer was DGIC's "senior claims attorney."  (Exhibit C, 9:19-22)  She

provided "legal analysis and opinions" on "file handling matters" in Georgia.

(Exhibit C, 10:5-19)  In the email quoted above, Quackenbush was seeking legal

advice from attorney Greer before making the decision to convene a GSC.

(Exhibit C, 22:21 – 23:17 and Exhibit F, p.2, bottom)  Such legal questions arising

in claims handling were supposed to be elevated to Greer.  (Exhibit C, 16:2-9)

Attorney Greer correctly understands that the insurance policy gives DGIC

"discretion to settle claims as it sees fit."  (Exhibit C, 51:12 – 52:1 and Doc 1-1,

p.18)  In her discretion as counsel for DGIC, Greer thought a GSC was "a good

idea."  (Exhibit C, 26:21-23)  Thus, attorney Greer's legal advice was to move

---

[1] Mr. Chumley also sent a demand for the wrongful death of Andrew's grandmother.
That claim was settled without a lawsuit and is not at issue in this motion.

forward with the GSC.  (Exhibit F, p.2, top)  It is undisputed Quackenbush and

attorney Greer made the decision to hold a GSC and that it was within their

authority to make that decision.  (Exhibit E, 41:15 – 42:10)

### D.      DGIC Instructs St. Amand to Convene a GSC Without First Seeking His Advice on Whether a GSC is a Good Idea.

Quackenbush and attorney Greer instructed Matoy to retain outside counsel

Michael St. Amand to convene a GSC.  (Exhibit B, 170:7-12)  Attorney Greer

characterized the scope of St. Amand's representation as scheduling and handling

the GSC and not giving advice on whether a GSC was a good idea:

- "[W]e wanted to assign the task to Mike St. Amand for handling to schedule the global settlement conference."  (Exhibit C, 28:10-12)

- "So we wanted to give everybody a proportionate piece of the pie and get releases for the insured driver and the named insured, and that's what we wanted Mike St. Amand to do for us."  (Exhibit C, 28:17-20)

- St. Amand was authorized to schedule a global settlement conference and "cut pieces of the pie for claimants."  (Exhibit C, 29:19-25)

- "The plan was to assign it out, to have a Georgia attorney set up the global settlement conference."  (Exhibit C, 44:24 – 45:2)

Quackenbush's description is similar:  "We asked Mr. St. Amand to work on

apportioning [policy limits] to resolve all the claims."  (Exhibit E, 49:14-18)  In

accordance with instructions from DGIC management and DGIC in-house counsel,

Matoy instructed St. Amand to set up a GSC.  (Exhibit F, p.1)  The August 15

email instructing St. Amand is the first communication from DGIC to St. Amand

regarding this claim.  (Exhibit F, p.1; Exhibit B, 170:1-6; Exhibit E, 42:16 – 43:2 and Exhibit G, 21:14-24)  The August 15 email instructs St. Amand what do to, but it does not ask advice on what to do.  (Exhibit F)

St. Amand does a conflict check before he gives legal advice.  (Exhibit G, 55:23 – 56:2)  Before he did a conflict check, DGIC had already instructed him to conduct a GSC.  (Exhibit G, 57:7-11)  St. Amand described the scope of his representation as follows:  "I was retained by Direct General specifically to set up a global settlement conference."  (Exhibit G, 18:13-15)

### E.    DGIC Rejects the Time-Limited Demand.

On September 6, 2018, St. Amand sent on behalf of DGIC a letter to claimants, proposing a GSC and offering to let the claimants determine how to divide the $50,000 aggregate limits.  (Exhibit H)[2]  DGIC intended the September 6 letter as a response to the still-pending August 9 time-limited demand to settle the claim for the wrongful death of Andrew.  (Exhibit B, 119:1-7)  Greer defended the September 6 letter as "a timely response" to the demand.  (Exhibit C, 57:17-23)  DGIC approved the September 6 letter.  (Exhibit G, 60:11 – 61:4)  The September 6 letter is the letter DGIC wanted sent, and St. Amand did not do anything DGIC did not want him to do.  (Exhibit E, 63:16-21 and Exhibit C, 59:10-20).

---

[2] While DGIC was approving the letter, Quackenbush asked St. Amand if holding a GSC would protect DGIC.  St. Amand responded that a GSC would not protect DGIC.  (Exhibit J, p.1)  It is the only time DGIC asked for St. Amand's advice.

**F.    The September 6 Counteroffer Causes a Lawsuit and Excess Judgment.**

The September 6 letter was a counter-offer and rejection of the time-limited demand to settle the claim for the wrongful death of Andrew.  As a result, Andrew's parents eventually filed a wrongful death lawsuit in DeKalb County State Court ("Underlying Lawsuit").  (Doc 36, p.15, ¶43)  The Underlying Lawsuit went to trial, and on August 2, 2023, a judgment of $14 million was entered against Mr. Hirsh for Andrew's wrongful death.  (Doc 36, p.17, ¶51)

**III.    ARGUMENT AND CITATION OF AUTHORITY**

**A.    Standard on Motion for Partial Summary Judgment.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Mr. Hirsh seeks partial summary judgment on six discrete issues.  (Infra., p. 2)  The first two issues involve contract interpretation, which this Court may do as a matter of law.  The other four issues involve DGIC's affirmative defenses, for which it bears the burden at trial.  There are two methods by which Mr. Hirsh can show entitlement to partial summary judgment and have the affirmative defenses dismissed as a matter of law:

> When the *nonmoving* party has the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility.  Instead, the moving party simply may show – that

is, point out to the district court – that there is an absence of evidence
to support the nonmoving party's case.

Alternatively, the moving party may support its motion for summary
judgment with affirmative evidence demonstrating that the nonmoving
party will be unable to prove its case at trial.  If the moving party shows
the absence of a triable issue of fact by either method, the burden on
summary judgment shifts to the nonmoving party, who must show that
a genuine issue remains for trial.  If the nonmoving party fails to "make
a sufficient showing on an essential element of her case with respect to
which she has the burden of proof, the moving party is entitled to
summary                                                        judgment.

*U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991)

(emphasis in original) (cleaned up) (citing *Celotex v. Catrett*, 477 U.S. 317 (1986).

### B.    The Offer was Capable of Acceptance.

#### 1.    Courts construe offers as a matter of law.

An insurer is liable for a judgment in excess of policy limits "where the

insurer is guilty of negligence, fraud, or bad faith in failing to compromise the

claim." *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268 (1992).  The duty to settle arises

"when the injured party presents a valid offer to settle within the insured's policy

limits." *First Acceptance v. Hughes*, 305 Ga. 489, 489 (2019).  *First Acceptance*

was the first time Georgia's high court used the term "valid" in relation to an offer

to settle.  In determining whether the offer at issue was "valid", the court construed

the offer as a matter of law using blackletter rules of contract construction.  *Id.* at

493.  A "valid" offer is, therefore, an offer deemed capable of acceptance under

contract law, a task this Court can perform as a matter of law.

An insurer's liability for failure to settle is premised on the plaintiff showing "settlement was possible." *Camacho v. Nationwide*, 13 F. Supp. 3d 1343, 1357 (N.D. Ga. 2014). In other words, the offer must have been "capable of acceptance" under contract law. *Id*. In *Camacho*, the insurer argued the offer was confusing and incapable of acceptance under contract law. 13 F. Supp. 3d at 1357. This Court set out to construe the demand, noting that it was "not a model of clarity." *Id*. at 1359. Nonetheless, upon construing the demand "in its entirety," this Court found it to be "a legally acceptable offer, susceptible to [the insurer's] prompt response, and thus that settlement was possible" as a matter of law. *Id*. at 1360.

2.  The demand complied with Georgia's "offer statute" and was capable of acceptance as a matter of law.

The demand was capable of acceptance as a matter of law. (Exhibit A) It was made pursuant to O.C.G.A. § 9-11-67.1,[3] which requires demands to have at least five material terms. § 9-11-67.1(a)(1)-(5). The demand plainly complied:

**Deadline.** "You have 30 days from your receipt of this offer to accept it." (Exhibit A, p. 1) The deadline is clear, and this Court should rule that the demand complied with the offer statute's deadline requirement as a matter of law.

**Amount.** The demand opens with, "we are providing to you a reasonable opportunity to settle" the wrongful death claim "**for an amount within policy**

---

[3] The "offer statute" was passed in 2013 and has been amended twice. The version in effect at the time of the demand is attached as Exhibit I.

**limits**." (Exhibit A, p. 2, first paragraph, emphasis added)  This is classic language from *Holt* and its progeny, and the demand is clearly seeking "policy limits."

The demand references "*$100,000 for example purposes only*." (Exhibit A, p. 4, bottom, emphasis in original)  The demand uses a figure "*for example purposes only*" because, as the demand explains, DGIC had not "divulged said coverage amount in writing." (Exhibit A, p. 4, second to last paragraph).  Reading the demand in its entirety – as this Court should do under the rules of contract construction – the demand is seeking policy limits, whatever they might be.

The demand also sought limits for other policies insuring Ms. Hartsfield for liability arising out of the accident.  (Exhibit A, p. 6, top)  Subparagraphs (b)(i), (ii), (iii) and (c) list other types of policies that might provide coverage to Ms. Hartsfield, i.e., other policies she might have on other vehicles, resident relative coverage, and umbrella liability coverage.  There was no such other coverage, so even if DGIC had investigated the issue, it was not an impediment to acceptance.

DGIC personnel must not have read the demand carefully, as they say they thought it was for $100,000.  (Exhibit B, 160:9-14; Exhibit E, 36:7-8 and Exhibit C, 38:25 – 39:116:)  To read the demand as seeking $100,000, one must ignore the phrase "*for example purposes only*."  But this Court must read the demand "in its entirety." *Camacho*, 13 F. Supp. 3d at 1360.  Reading the demand in its entirety, it sought the policy limits, whatever they might be, and this Court should so rule.

**Parties to be released.**  The demand offered to release Ms. Hartsfield "and/or" her estate.  (Exhibit A, p. 5, ¶2)  The demand also offered to release DGIC.  (Exhibit A, p. 14)  These are terms capable of acceptance that comply with the offer statute, and this Court should so rule as a matter of law.

**Type of release.**  The demand attached a draft limited release, so it identified the "type" of release as required by the offer statute.  Such releases are standard and authorized by Georgia law.  O.C.G.A. § 33-24-41.1.  The demand complied with the offer statute and was capable of acceptance, and this Court should so rule.

**Claims to be released.**  The demand identified the claimant, Christopher Evans, and the claim he offered to settle, the wrongful death of his son.  (Exhibit A, p. 1)  The letter set forth Georgia law on wrongful death, showing that a single parent like Christopher has authority to settle the claim for a child's wrongful death on behalf of both parents.  (Exhibit A, pp. 3-4)  The plain language of the demand, therefore, identified the claim DGIC had the opportunity to settle and that Christopher had legal authority to consummate settlement.  The demand complied with the offer statute and was capable of acceptance, and this Court should so rule.

**Deadline for payment.**  The offer statute authorizes offerors to impose a deadline for payment.  § 9-11-67.1(g).  Case law allows offerors to make timely payment a condition of acceptance as opposed to a condition of performance.  *Grange v. Woodard*, 300 Ga. 848, 855 (2017).  The demand at issue required

payment within 10 days of written acceptance as a condition of acceptance. (Exhibit A, p. 5, ¶(1))  The payment deadline complied with the statute and was capable of acceptance by DGIC, and this Court should so rule as a matter of law.

**Delivery of affidavits.**  Because an offeror is still "master of her offer", a demand under the offer statute "may include terms other than those listed in subsection (a) [of the offer statute]."  *Grange*, 300 Ga. at 855.  The demand in this case required certain affidavits in the event DGIC alleged its policy was the sole liability coverage for Ms. Hartsfield.  (Exhibit A, p. 6, ¶d)  DGIC adjustors are accustomed to providing such affidavits.  (Exhibit B, 167:14-18)  According to DGIC's expert, such affidavits are customary features of such demands.  (Exhibit D, 48:24 –49:10)  Accordingly, the affidavit requirement complied with the offer statute and was capable of performance by DGIC, and this Court should so rule.

It is undisputed DGIC did not attempt to accept the demand.  DGIC did not investigate the existence of other policies or attempt to gather affidavits.  However, the demand was, in fact, capable of acceptance as a matter of law.  This Court should construe the offer, rule it was capable of acceptance, and grant this motion.

**C.    DGIC Rejected the Demand by Making a Counteroffer.**

Confoundingly, DGIC denies it rejected the demand.  More confoundingly, DGIC personnel have testified DGIC accepted the demand.  (E.g., Exhibit E, pp.62; 63:22 – 64:2)  "I believe it's an – it's an acceptance of the demands."

(Exhibit E, 65:4-5)  As shown below, DGIC failed to accept the demand.  In fact, DGIC made a counteroffer and rejection as a matter of law.

       1.     DGIC failed to accept the demand.

Under the offer statute, DGIC could have begun the process of acceptance by simply "providing written acceptance of the material terms outlined in subsection (a) of this Code section in their entirety."  O.C.G.A. § 9-11-67.1(b).  The Supreme Court of Georgia has ruled that demands under the statue "must be accepted in writing."  *Grange*, 300 Ga. at 855-56.  Applying *Grange*, the Court of Appeals ruled that "some written statement accepting each or all of the material terms is required."  *Duenas v. Cook*, 347 Ga. App. 436, 442 (2018).  There is an absence of evidence of anything resembling a written acceptance under § 9-11-67.1(b).  Accordingly, DGIC rejected the demand as a matter of law.

       2.     DGIC made a counteroffer, which constitutes a rejection.

"Like offers, responses to offers are construed with 'an objective theory of intent'" as a matter of law.  *Kemper v. Equity*, 2021 WL 3667023, at *4 (N.D. Ga.).  "[A]n answer to an offer will not amount to an acceptance … unless it is unconditional and identical with the terms of the offer."  *Torres v. Elkin*, 317 Ga. App. 135, 141 (2012).  A response to an offer that "imposes any new conditions []" constitutes a counteroffer."  *Id*.  "A counteroffer acts to reject and nullify the original offer."  *Kemper*, 2021 WL 3667023 at *4.

It is undisputed that the first written response to the demand was a letter dated September 6, 2018, by attorney Michael St. Amand on behalf of DGIC. The September 6 letter was DGIC's response to the time-limited demand. (Exhibit B, 119:1-7 and Exhibit C, 57:17-23)

> The September 6 letter reads, in part, as follows:
>
> Direct General has agreed to tender its "per accident" liability limits of $50,000.00 among the bodily injury claimants and in an effort to be fair to all claimants and to its insured, would like the available limits to be allocated between all claimants based upon their relative injuries and damages.
>
> Direct General is asking representatives of all interested parties to attend a global settlement conference to determine a fair allocation of Direct General's $50,000.00 limits that is acceptable to all.

(Exhibit H)

That the September 6 letter is a counteroffer might be the easiest ruling this Court ever makes. The time-limited demand was for the available per-person limits, which turned out to be $25,000. The September 6 letter, however, offers to begin negotiating an amount. The demand reasonably asked DGIC to provide, *inter alia*, an affidavit regarding other policies DGIC might have issued that insured Ms. Hartsfield, but the September 6 letter provided no affidavits. The demand sought actual payment, but no payment was made. The September 6 letter was a counteroffer and rejection, and this Court should so rule as a matter of law.

## D.    Advice of Counsel.

### 1.    It is not clear Georgia recognizes an advice-of-counsel defense, particularly as to "negligent" failure to settle.

DGIC asserts the following affirmative defense:

> In handling any potential settlement, Direct General retained third-party counsel, Michael St. Amand. Direct General's actions were made in reliance upon and in accordance with the legal advice provided by third-party counsel.

(Doc 36, p.5, Eleventh Affirmative Defense)  DGIC aims to deflect blame for its decision to reject the demand and lay it at the feet of St. Amand.

It is not clear Georgia recognizes an advice-counsel defense in a case alleging negligent or bad-faith failure to settle.  One of the seminal cases on the cause of action addressed advice of counsel as follows:  "Reliance on the advice of counsel in declining the offer of settlement is not an act of bad faith."  *U.S. Fid. & Guar. Co. v. Evans*, 116 Ga. App. 93, 105 (Eberhardt, J., dissenting), *aff'd,* 223 Ga. 789 (1967).  However, that statement was by the dissent, and the majority of the appellate panel obviously rejected the advice-of-counsel defense.

In other areas of the law, advice of counsel can be a defense to claims of intentional or willful misconduct.  *E.g.*, *U.S. v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013) ("Good faith reliance on counsel's advice can negate the mens rea element of willfulness.") and *Glock, Inc. v. Wuster*, 2019 WL 13043038, at *18

(N.D. Ga.) ("[g]ood faith reliance on the advice of counsel is a defense to a charge of deliberate and willful infringement or bad faith").

"An insurer is liable for a judgment in excess of policy limits "where the insurer is guilty of negligence, fraud, **or** bad faith in failing to compromise the claim." *Holt*, 262 Ga. at 268 (emphasis added). "[R]ecovery is permitted for a negligent refusal to settle." *Home Ins. v. N. River Ins.*, 192 Ga. App. 551, 556 (1989). "[N]egligent, as well as bad faith, failure to settle is actionable in Georgia." *Delancy v. St. Paul Fire & Marine*, 947 F.2d 1536, 1548 (11th Cir. 1991). Advice of counsel is irrelevant and no defense to negligent failure to settle.

> ## 2. DGIC itself decided to conduct a GSC before it ever sought St. Amand's advice.

Whatever the contours of the affirmative defense, it is DGIC's burden to establish the law and facts on which it relies. *Vernon*, 723 F.3d at 1269. The precise elements may not matter, however, as DGIC did not, in fact, rely on St. Amand's advice in deciding to convene a GSC in response to the demand.

When DGIC received the August 9 demand, it was elevated to Quackenbush. On August 13, Quackenbush sought advice from inhouse counsel on whether DGIC "should look at some sort of [GSC]." (Exhibit F, p.2, bottom) Greer thought a GSC was "a good idea." (Exhibit C, 26:21-23) After all, GSC's were DGIC's standard procedure for claims like the one at issue. (Exhibit C, 25:9-14) Greer gave legal advice to Quackenbush to convene a GSC. (Exhibit C, 22:21 –

23:17 and Exhibit F, p.2)  Quackenbush and attorney Greer decided to hold a GSC, and it was within their authority to make that decision.  (Exhibit E, 41:15 – 42:10)

All of this occurred before St. Amand was retained and before he gave any legal advice.  (Exhibit G, 55:23 – 56:2 and 57:7-11)  Under these undisputed facts, DGIC cannot fulfill its burden to show that it decided to hold a GSC on St. Amand's advice.  DGIC's defense fails as a matter of law.

> 3.    DGIC hired St. Amand to "schedule" and "conduct" a GSC, not to advise on whether it was a good idea.

Attorney Greer characterized the scope of St. Amand's representation as scheduling and handling the GSC and not giving advice on whether the GSC was a good idea.  DGIC assigned him a "task" to "schedule" the GSC.  (Exhibit C, 28:10-12)  St. Amand was authorized to schedule the GSC and "cut pieces of the pie for claimants."  (Exhibit C, 29:19-25)  St. Amand's role was to "set up" the GSC.  (Exhibit C, 44:24 – 45:2)  "I was retained by Direct General specifically to set up a global settlement conference."  (Exhibit G, 18:13-15)

The August 15 assignment instructed St. Amand to set up a GSC.  The August 15 assignment did not ask St. Amand if it was a good idea.  (Exhibit F, p.1)  DGIC had already decided prior to August 15.  DGIC cannot fulfill its burden to show it retained St. Amand to advise on how to respond to the demand or whether to set up a GSC.  This Court should grant this motion.

<u>4.</u>     <u>There is an absence of evidence DGIC would have done</u>
<u>anything differently.</u>

Before sending the September 6 letter, St. Amand was asked about GSCs,
but the decision had already been made.  (<u>Exhibit J</u>, p. 2)  Moreover, St. Amand did
not advise DGIC that a GSC insulated it from bad-faith liability.  (<u>Exhibit J</u>)
Indeed, St. Amand told DGIC there was "no way" to insulate itself from liability.
(<u>Exhibit J</u>, p. 1)  DGIC did not reconsider its decision.

Moreover, DGIC was not going to accept the demand no matter what St.
Amand said.  Remember, all three working on the claim thought it was for
$100,000.  (<u>Exhibit B</u>, 160:9-14; <u>Exhibit E</u>, 36:7-8 and <u>Exhibit C</u>, 38:25 – 39:1)
DGIC thought the demand was incapable of acceptance.  There is no evidence St.
Amand put that idea into anyone's head.

Blaming St. Amand is a cynical *post hoc* rationalization for DGIC's own
failings and decisions.  There is no evidence DGIC would have done anything
different based on St. Amand's advice.  The advice of counsel defense fails as a
matter of law, and this Court should so rule.

**E.     DGIC Cannot Fulfill its Burden to Show "Set-Up", and its
Affirmative Defense Should be Dismissed.**

DGIC asserts the following affirmative defense:

… Direct General was precluded from carrying out the performance
of its good faith efforts as counsel for Christopher Evans and Polina
Denissova did not intend to enter into a settlement agreement and
instead sought to set up an extracontractual claim for failure to settle,

as further demonstrated by the assertion of estate claims in the underlying lawsuit, despite previously representing that no such estate claims would be brought.

(Doc 36, p.3, Sixth Affirmative Defense)

In Georgia, the notion of "set up" has its genesis in *Holt*, where the court stated in dicta that an attorney cannot "'set up' an insurer for an excess judgment merely by offering to settle within the policy limits and by imposing an unreasonably short time within which the offer would remain open." *Holt*, 262 Ga. at 269. In other dicta, a judge on the Court of Appeals has written that the law can create an incentive to set up a bad faith claim. *White v. Cheek*, 360 Ga. App. 557, 564 (2021) (J. McFadden, concurring specially). "The General Assembly addressed that perverse incentive by adopting O.C.G.A. § 9-11-67.1." *Id.*

In this case, the demand did not impose an "unreasonably short" deadline as contemplated by *Holt*. The deadline was 30 days, as required by the General Assembly. O.C.G.A. § 9-11-67.1(a)(1). There is an absence of evidence that DGIC requested additional time to respond to the demand. Indeed, DGIC defends its September 6 response to the demand as "timely." (Exhibit C, 57:17-23) Furthermore, the adjustor with primary responsibility for the demand testified that all terms (except for her mistaken belief that the demand was for $100,000) were reasonable. Therefore, there were no "onerous requirements" in the demand as was Judge McFadden's concern in *White*. 360 Ga. App. at 564.

Dax Lopez is an attorney retained to opine on "what a reasonable and prudent plaintiff's attorney would do in a situation similar to one in this case where there are numerous claimants and insufficient limits."  (Exhibit K, 38:20-25).  In Georgia, Mr. Lopez explainedd, a bad faith "set up" is where an attorney sends a demand that is difficult to accept and designed to trip up the insurance company into failing in its attempts to accept.  (Exhibit K, 62:6-24)  The demand in this case was not designed to be difficult to accept and is not an attempt to "set up" DGIC.  (Exhibit K, 62 and 64:12-15)  DGIC has no expert testimony to the contrary.

DGIC contends Andrew's parents "did not intend" to settle.  (Doc 36, p.3)  The only evidence of anyone's intent to settle is the demand letter, which objectively offered to settle the wrongful death claim.  Evans and Denissova's intent is not material, as DGIC could have accepted the demand and created an enforceable settlement agreement notwithstanding any secret intent.  Furthermore, there is no evidence of their intent one way or the other.

Although the demand stated Christopher Evans would not create an estate for his son (Exhibit A, p. 4), the fact that an estate was created *after* DGIC rejected the demand is immaterial to an alleged "set up."  Whether the family created an estate or not, there would have been no bad-faith claim arising out of the failure to settle the wrongful death claim had DGIC accepted the demand.  By the same token, if the family had not created an estate, there would still be a bad-faith claim

for DGIC's failure to settle the wrongful death claim.  The subsequent creation of an estate is an immaterial fact that does not support the "set up" defense.

It is not clear what DGIC believes a "set up" is under the law or what facts support an alleged "set up."  Perhaps DGIC will provide support in its response.  In the meantime, however, there is an absence of evidence to support any "set up," and the Court should dismiss the affirmative defense as a matter of law.

### F.    Unclean Hands and/or Estoppel.

#### 1.    DGIC cannot carry its burden to support its affirmative defense of unclean hands.

DGIC asserts the affirmative defenses of "unclean hands and/or estoppel." (Doc 36, p.4, Ninth Affirmative Defense)  The doctrine of "unclean hands" is enshrined in statute:  "When both parties are equally at fault, equity will not interfere but will leave them where it finds them."  O.C.G.A. § 23-1-15.  "The equitable doctrine of unclean hands has no application to an action at law."  *Park v. Fortune Partner, Inc.*, 279 Ga. App. 268, 273–74, 630 S.E.2d 871, 877 (2006).

In this case, Mr. Hirsh's counterclaims are actions at law.  Accordingly, the affirmative defense has no application to this action, and this Court should dismiss it as a matter of law.  Furthermore, there is no evidence of any action by Mr. Hirsh indicating he has "unclean hands."  There is an absence of evidence supporting the affirmative defense, and this Court should dismiss it as a matter of law.

2.     DGIC cannot carry its burden to support its affirmative defense of equitable estoppel.

To establish equitable estoppel, DGIC must show: (1) a false representation or concealment of facts by Mr. Hirsh; (2) which facts are within the knowledge of Mr. Hirsh; (3) that DGIC was ignorant of the truth; (4) that Mr. Hirsh acted intentionally; (5) and that DGIC has been induced to act to its detriment by reason of Mr. Hirsh's alleged conduct. *Kim v. Park*, 277 Ga. App. 295, 296 (2006).

There is an absence of evidence to support these elements. Mr. Hirsh made no false statement. Mr. Hirsh concealed nothing. DGIC has not alleged it was induced to act to its detriment by anything Mr. Hish did or did not do. Indeed, DGIC rejected the demand before Mr. Hirsh was involved. DGIC cannot fulfill its burden to support its affirmative defense of estoppel, and this Court should dismiss it as a matter of law.

## G.     Setoff.

DGIC asserts it is "entitled to a setoff for all sums paid in connection with the underlying civil action." (Doc 36, p.5, Thirteenth Affirmative Defense) "Setoff does not operate as a denial of the plaintiff's claim; rather it allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff." O.C.G.A. § 13-7-1. Setoff "must be asserted as a counterclaim rather than as a defense." *Stewart v. Stewart*, 236 Ga. App. 348, 349 (1999).

DGIC has no claim for setoff.  First, it asserted no claim for reimbursement of defense costs either as an affirmative claim in its complaint or as a counterclaim in response to Mr. Hirsh's counterclaim.  The affirmative defense is improper procedurally, and this Court should reject it as a matter of law.

Furthermore, DGIC paid defense costs in the Underlying Lawsuit because it was contractually obligated to do so by the terms of the insurance policy: "We will defend … any claim or suit."  (Doc 1-1, p.18)  The policy has no provision allowing DGIC to recoup defense costs.  There is an absence of evidence of DGIC reserving its rights to recoup defense costs.  *See*, *GIRMA v. Sandy Springs*, 337 Ga. App. 340, 347 (2016) (rejecting insurer's attempt to recoup defense costs in case of no coverage because insurer did not timely reserve its rights to do so).  There is an absence of evidence supporting DGIC's frivolous affirmative defense of set off, and this Court should dismiss it as a matter of law.

Respectfully submitted on August 26, 2024.

<div style="margin-left: 40%;">

*/s/Richard E Dolder, Jr.*
James (Jay) Sadd
Georgia Bar No. 622010
Richard E. Dolder, Jr.
Georgia Bar No. 220237
**SLAPPEY & SADD, LLC**
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (telephone)
jay@lawyersatlanta.com
rich@lawyersatlanta.com
*Attorneys for Mr. Hirsh*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **D. Max Hirsh's Motion for Partial Summary Judgment** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record for all parties.  I further certify that I caused a copy of the foregoing to be served via U.S. mail on the following *pro-se* party:

<div align="center">

Roger Hartsfield
29 Duncan Drive SW
Cartersville, GA 30120

</div>

I further certify that the foregoing was prepared in Times New Roman 14pt font and otherwise complies with Local Rule 5.1.

Respectfully submitted August 26, 2024.

<div align="right">

*/s/Richard E. Dolder, Jr.*
Richard E. Dolder, Jr.
Georgia Bar No. 220237
**SLAPPEY & SADD, LLC**
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (telephone)
rich@lawyersatlanta.com
*Attorney for Mr. Hirsh*

</div>