Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

```
- - - - - - - - - - - - - - - - )
ATLANTA DIVISION DIRECT         )
GENERAL INSURANCE COMPANY,      )
                                )
            Plaintiff,          )
vs.                             )  Civil Action File
                                )  No: 1:23-cv-03491-ELR
CHRISTOPHER EVANS and POLINA    )
DENISSOVA, individually and     )
as co-administrators of the     )
ESTATE OF ANDREW EVANS, ROGER   )
HARTSFIELD and D. MAX HIRSH,    )
as administrator of the         )
ESTATE OF SHANNON HARTSFIELD,   )
                                )
            Defendants.         )
- - - - - - - - - - - - - - - - )
```

    The virtual deposition of MICHAEL ST. AMAND,

taken on behalf of the Plaintiffs, pursuant to

the stipulations contained herein; the reading

and signing of the deposition reserved, before

Kris Laroche, Certified Court Reporter, via Zoom

videoconferencing, on the 28th day of March, 2024,

commencing at the hour of 10:08 a.m.

_____

            M A G N A   L E G A L   S E R V I C E S

                         866-624-6221
                        www.MagnaLS.com



EXHIBIT G

Page 18

1  that you're working on, do you have experience
2  handling matters that concern multiple competing
3  claims arising out of a single occurrence?
4       A    I -- I do.
5       Q    Okay.  And turning to this matter, do you
6  recall when you were retained or when you were
7  brought on board by Direct General?
8       A    Not the specific date, but it was August of
9  2018.
10      Q    Okay.  So around August of 2018, you were, I
11 guess, retained to represent the interests of the
12 insured and the driver; correct?
13      A    No, I was retained by Direct General
14 specifically to set up a global settlement
15 conference.  And at the very beginning, I would've
16 clarified with them whether I'm to represent the
17 company or to represent the insured or insureds.  And
18 in this case, I was not representing the insureds.
19      Q    Okay.  Who were you told you were
20 representing?
21      A    Direct General.
22      Q    Okay.  Were you protecting the interest of
23 the insured at the time?
24      A    So, in the -- in the context of representing
25 the insurance company, their obligation is to hold



Page 21

1  with the email and the attachments, a total of 48
2  pages.  And it looks like Ms. Matoy sent to you the
3  name of the insured, the name of the driver, the date
4  of loss, where the accident occurred, the fact that
5  it's an intersection loss, and then also she names
6  the three passengers that were in the insured's
7  vehicle.  They all died due to injury.  So, she lists
8  out the ages, then she gives you the contact
9  information for Christopher Evans on behalf of Andrew
10 Evans and Nancy Evans, Montlick & Associates.  And
11 this information here was provided to you on August
12 15th; correct?
13      A    Yes.
14      Q    Okay.  So would this be -- you said August
15 of 2018, earlier you said that -- that was probably
16 around the time that you first became involved.
17 Would this be the email you were referring to as to
18 when you got the referral?
19      A    Yes, there could have been a phone call
20 before.  I don't know if she says in there, you know,
21 per our conversation or not, but a lot of times
22 they'll just call up and find out if I've got the
23 capacity to handle something.  But this would've been
24 the first substantive communication.
25      Q    Okay.  And do you know who Montlick &



Page 55

```
1            MR. DOLDER:  Great.  Thank you.
2                         - - -
3                       EXAMINATION
4    BY MR. DOLDER:
5        Q    Thank you, Mr. St. Amand, for appearing
6    today.  We appreciate your time.
7             And I will need permission to share my
8    screen.  Do I have that already?  I do, but I can't
9    get --
10           MR. PARKER:  It looks like you have but your
11       screen is off.
12           MR. DOLDER:  Okay, good.
13   BY MR. DOLDER:  (Resuming)
14       Q    All righty.  Mr. St. Amand, do you see the
15   email I have attached as -- marked as Exhibit 6
16   (sic), it's an email dated, Friday, August 17th,
17   2018?
18       A    I do.
19       Q    Okay.  Is that an email from your firm
20   informing Direct General that your conflict check had
21   cleared?
22       A    Yes.
23       Q    All right.  And it's true, isn't it, that
24   you do a conflict check before you take on a -- a
25   representation, and before you start giving legal
```



Page 56

```
 1   advice; correct?
 2        A    Correct.
 3        Q    Okay.  Now I've put up, Exhibit 2 -- the
 4   email previously marked as Exhibit 2, that is from,
 5   Jeanna Matoy of Direct General to you, dated August
 6   15th, 2018.  Do you remember, testifying about this
 7   email previously this morning?
 8        A    Yes.
 9        Q    And this is the email in which Direct
10   General asked you to set up a Global Settlement
11   Conference; correct?
12        A    Correct.
13        Q    And this email is August 15th, which is two
14   days before you finished your conflict check;
15   correct?
16             MS. CRONAN:  Object to the form.
17             THE WITNESS:  Correct.  Well, the conflict
18        check --
19   BY MR. DOLDER:  (Resuming)
20        Q    Before you --
21        A    Well, let me just -- let me just correct.
22   The conflict check may have been completed by the
23   afternoon of the 16th, but then the Weaver, my
24   paralegal, would've let them know at six something am
25   on the 17th.
```



Page 57

1    Q    Okay.  So, it -- whenever the conflict check
2   was completed, it was completed after Direct General
3   had instructed you on how to proceed in this matter;
4   correct?
5    A    I'm not sure what you mean by how to proceed
6   in this matter.
7    Q    Before you had completed a conflict check,
8   Direct General had already informed you that it
9   wanted you to conduct a Global Settlement Conference?
10           MS. CRONAN:  Object to the form.
11           THE WITNESS:  Correct.
12           MR. DOLDER:  And what -- what's -- what's
13       the problem with the form so I can cure it?
14           MS. CRONAN:  What are you -- what are you
15       saying essentially about the Global Settlement
16       Conference?  Who referred who, what do you mean
17       by that?  Are we talking about the document?
18       Because it speaks for itself?
19           MR. DOLDER:  Okay.  I just want to know what
20       the objection to the form is.
21   BY MR. DOLDER:  (Resuming)
22    Q    Mr. St. Amand, Direct General is the party
23   that retained you in this matter; correct?
24    A    Yes.
25    Q    And Direct General was your only client;



Page 60

1  Global Settlement Conference.
2      Q    Prior to this query?
3      A    Yes.  But before this query, I'd sent them a
4  proposed letter setting up the Global Settlement
5  Conference.  If they had decided they wanted to do
6  something different at this point, I think they still
7  could have.
8      Q    Okay.  Fair enough.  Well, let's take a look
9  at that letter, or at least the final version that
10 you sent out.
11          I'm going to go to Exhibit 4 now, what was
12 marked previously this morning as Exhibit 4, and it
13 attached an -- a letter from you, dated September
14 6th, 2018, addressed to various parties.  Do you --
15 do you see that pretty well?
16     A    I do.
17     Q    Okay. Excellent.  And so, I -- I -- I want
18 to make sure, Direct General approved this letter
19 before you sent it out; isn't that right?
20     A    Yes.
21     Q    And as far as you know, this is the letter
22 Direct General wanted you to send out; is that
23 correct?
24     A    Yes.
25     Q    And when you drafted this letter, you were



Page 61

1  trying to accomplish what Direct General had asked
2  you to do; correct?
3          MS. CRONAN:  Objection to the form.
4          THE WITNESS:  Yes.
5          MR. DOLDER:  And what -- what's the problem
6      with the form, Candace?
7          MS. CRONAN:  Well, I -- you're asking here
8      about this letter that was already previously
9      provided as the -- the exhibit you just showed
10     him, and I think you're -- there's not -- none of
11     those -- we are trying to add facts as to what
12     was being accomplished.
13         MR. DOLDER:  Okay.  Thank you.
14         MS. CRONAN:  Maybe if you can just ask it
15     different -- a little different.
16         MR. DOLDER:  I -- I'm satisfied with -- with
17     how that went.
18         MS. CRONAN:  Okay.
19 BY MR. DOLDER:  (Resuming)
20     Q    All right.  Mr. St. Amand, let -- let's look
21 at the very first sentence of your letter.  And it
22 begins, I have been retained by Direct General
23 Insurance Company, and it -- and it goes on.  Do you
24 see that?
25     A    Yes.

