IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DIRECT GENERAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTOPHER EVANS and POLINA DENISSOVA, individually and as co-administrators of the ESTATE OF ANDREW EVANS, ROGER HARTSFIELD and D. MAX HIRSH, as administrator of the ESTATE OF SHANNON HARTSFIELD, <br><br> Defendants. | CIVIL ACTION <br> FILE NO. 1:23-cv-03491-ELR |

### STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF D. MAX HIRSH'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant D. Max Hirsh, as Administrator of the Estate of Shannon Hartsfield, respectfully submits this Statement of Undisputed Material Facts in Support of his Motion for Partial Summary Judgment.

1.

On July 27, 2018, Shannon Hartsfield was driving with three passengers: Nancy Evans, Andrew Evans and Richie Willis. Andrew was Nancy Evans's six-year-old grandson. (Doc 36, pp.5-6, ¶¶1-2)

2.

Ms. Hartsfield was involved in an accident with a vehicle driven by Shannon Justus in which Mr. Justus' two sons, William Justus and Drake Justus, were also passengers. (Demand, <u>Exhibit A</u>, p.11)[1]

3.

As a proximate result of the collision, Ms. Hartsfield and all three of her passengers were killed. (Doc 36, p.6, ¶4)

4.

The occupants of Ms. Justus' vehicle reported bodily injuries, but the extent of their injuries was not clear. (Matoy depo., <u>Exhibit B</u>, Page 43, Lines 1-17)

5.

Ms. Hartsfield was insured for her legal liability arising out of the accident by an automobile liability policy issued by Direct General Insurance Company ("DGIC"), with bodily injury liability limits of $25,000 per person and $50,000 in the aggregate. (Doc 1-1 p.1)

6.

The policy's Insuring Agreement states as follows:

> We will settle … as we consider appropriate, any claim or suit asking for these damages. …

(Doc 1-1, p.18)

---

[1] All exhibits are attached to the brief served contemporaneously herewith.

7.

According to DGIC's inhouse claims attorney, that provision of the policy gives DGIC "discretion to settle claims as it sees fit." (Greer depo., <u>Exhibit C</u>, Page 51, Line 12 through Page 52, Line 1)

8.

DGIC assigned adjustor Jeanna Matoy to the claim. (Matoy depo., <u>Exhibit B</u>, Page 145, Lines 9-13)

9.

By August 2, 2018, adjustor Matoy determined Ms. Hartsfield had coverage for the July 27 wreck. (Matoy depo., <u>Exhibit B</u>, Page 146, Lines 2-11)

10.

By August 2, 2018, adjustor Matoy determined Ms. Hartsfield was clearly at fault for the wreck and that 6-year-old passenger Andrew Evans was blameless. (Matoy depo., <u>Exhibit B</u>, Page 146, Line 17 through Page 147, Line 7)

11.

By August 2, 2018, adjustor Matoy determined that the claim was going to vastly exceed policy limits. (Matoy depo., <u>Exhibit B</u>, Page 147, Lines 15-19)

12.

On August 9, 2018, attorney Rory Chumley, who represented Christopher Evans, father of 6-year-old decedant Andrew Evans, sent a time-limited demand to

DGIC.  (Exhibit A)

13.

Adjustor Matoy reviewed the demand on August 10.  (Matoy depo., Exhibit B, Page 150, Lines 7-14)

14.

Matoy believed the demand was for $100,000.  (Matoy depo., Exhibit B, Page 160, Lines 9-14)

15.

Matoy did not think there was anything unusual about the demand other than the amount demanded.  (Matoy depo., Exhibit B, Page 167, Lines 20-23)

16.

Matoy has provided affidavits like the ones requested in the demand letter many times in order to settle claims.  (Matoy depo., Exhibit B, Page 167, Lines 14-18)

17.

Colony's expert, Bernd Heinze, does not believe there is anything unreasonable about the affidavits requested in the demand letter (Heinze depo., Exhibit D, Page 48, Line 24 through Page 49, Line 10)

18.

Matoy brought the claim to the attention of Andrew Quackenbush, Regional Claims Leader, who was the supervisor for Matoy's supervisor.  (Matoy depo, Exhibit B, Page 41, Lines 4-13; Page 59, Lines 3-19 and Page 152, Lines 6-17; and Quackenbush depo, Exhibit E, Page 8, Lines 13-20 and Page 17, Lines 9-14)

19.

Quackenbush believed the demand asked for $100,000.  (Quackenbush depo., Exhibit E, Page 36, Lines 7-8)

20.

On August 13, 2018, Quackenbush sent an email to DGIC inhouse counsel Ellen Greer that included the following:

> Think we should look at some sort of Global Settlement Conference given all the potential exposures.
> … [¶]
> Would appreciate any guidance you can provide.

(August 15, 2018 email chain, Exhibit F, p.2, bottom message)

21.

Greer was a "senior claims attorney" at DGIC.  (Greer depo., Exhibit C, Page 9, Lines 19-22)

22.

Greer thought the demand was for $100,000.  (Greer depo., Exhibit C, Page 38, Line 25 though Page 39, Line 1)

23.

Greer provided "legal analysis and opinions" on "file handling matters" in Georgia.  (Greer depo., Exhibit C, Page 10, Lines 5-19)

24.

Legal questions arising in claims handling would be elevated to Greer. (Greer depo., Exhibit C, Page 16, Lines 2-9)

25.

In the August 13 email quoted above, Quackenbush was seeking legal guidance from attorney Greer before making the decision to convene a GSC. (Greer depo., Exhibit C, Page 22, Line 21 through Page 23, Line 17 and August 15, 2018 email chain, Exhibit F, p.2, bottom message)

26.

Attorney Greer responded to Quackenbush and advised him to move forward with the GSC and to retain Atlanta attorney Michael St. Amand to arrange and conduct the GSC.  (August 15, 2018 email chain, Exhibit F, p.2, top message)

27.

DGIC inhouse counsel Greer thought a global settlement conference was "a good idea."  (Greer depo., Exhibit C, Page 26, Lines 21-23)

28.

A GSC was DGIC's standard procedure "to handle our Georgia minimum limits cases when you have multiple competing claims with insufficient policy limits." (Greer depo., Exhibit C, Page 25, Lines 9-14)

29.

Quackenbush and attorney Greer instructed Matoy to retain St. Amand to convene a GSC. (Matoy depo, Exhibit B, Page 170, Lines 7-12)

30.

Quackenbush testified that he and attorney Greer made the decision to hold a GSC and that it was within their authority to make that decision. (Quackenbush depo., Exhibit E, Page 41, Line 15 through Page 42, Line 10)

31.

Attorney Greer characterized the scope of St. Amand's work to be scheduling and handling the GSC and not giving advice on whether the GSC was a good idea:

- a. "At this point, we wanted to assign the task to Mike St. Amand for handling to schedule the global settlement conference." (Greer depo., Exhibit C, Page 28, Lines 10-12)

- b. "So we wanted to give everybody a proportionate piece of the pie and get releases for the insured driver and the named insured, and that's what we wanted Mike St. Amand to do for us." (Greer depo., Exhibit C, Page 28, Lines 17-20)

    c.    St. Amand was authorized to schedule a global settlement conference and "cut pieces of the pie for claimants." (Greer depo., Exhibit C, Page 29, Lines 19-25)

    d.    "The plan was to assign it out, to have a Georgia attorney set up the global settlement conference. This is how we handle many of our minimum limits cases." (Greer depo., Exhibit C, Page 44, Line 24 through Page 45, Line 2)

32.

Quackenbush's description is consistent with attorney Greer's: "We asked Mr. St. Amand to work on apportioning [policy limits] to resolve all the claims." (Quackenbush depo., Exhibit E, Page 49, Lines 14-18)

33.

In accordance with instructions from Quackenbush and attorney Greer, adjustor Matoy sent an email to St. Amand instructing him to set up a GSC. (August 18, 2018 email chain, Exhibit F, p.1)

34.

The email instructing St. Amand to convene a GSC is dated August 15, 2018, and is the first communication from Direct General to St. Amand regarding this claim. (August 18, 2018 email chain, Exhibit F, p.1; Matoy depo., Exhibit B, Page 170, Lines 1-6; Quackenbush depo., Exhibit E, Page 42, Line 16 through Page 43, Line 2 and St. Amand depo., Exhibit G, Page 21, Lines 14-24)

35.

The August 15 email instructs St. Amand what do to. It does not ask advice

on what to do.  (Exhibit F)

36.

St. Amand does a conflict check before he takes on a legal representation and before he starts giving legal advice.  (St. Amand depo., Exhibit G, Page 55, Line 23 through Page 56, Line 2)

37.

Before St. Amand had completed a conflict check, and before he gave any legal advice on this claim, DGIC had instructed him to conduct a GSC.  (St. Amand depo., Exhibit G, Page 57, Lines 7-11)

38.

St. Amand described the scope of his representation as follows:  "I was retained by Direct General specifically to set up a global settlement conference."  (St. Amand depo., Exhibit G, Page 18, Lines 13-15)

39.

On September 6, 2018, St. Amand sent on behalf of DGIC a letter addressed to several potential claimants from the July 27 wreck, proposing a GSC and offering to divide the $50,000 limits among the claimants.  (Exhibit H)

40.

The September 6 letter was a response to the August 9 time-limited demand to settle the claim for the wrongful death of Andrew Evans.  (Matoy depo, Exhibit

B, Page 119, Lines 1-7)

41.

Greer referred to the September 6 letter as "a timely response" to the policy limits demand. (Greer depo., Exhibit C, Page 57, Lines 17-23)

42.

Prior to St. Amand sending the September 6 letter, he sent it to DGIC for review and approval. DGIC approved the letter before he sent it. It was the letter DGIC wanted him to send. (St. Amand depo., Exhibit G, Page 60, Line 11 through Page 61, Line 4)

43.

The September 6 letter is the letter Quackenbush wanted St. Amand to send. St. Amand did not write anything in the letter DGIC did not want him to write. (Quackenbush depo., Exhibit E, Page 63, Lines 16-21)

44.

Attorney Greer could not identify anything St. Amand did in handling the claim that DGIC did not want him to do. (Greer depo., Exhibit C, Page 59, Lines 10-20)

45.

DGIC personnel have testified that the September 6 letter is an acceptance of the demand. (E.g., Quakenbush depo., Exhibit E, Page 62 and Page 63, Line 22

through Page 64, Line 2) "I believe it's an – it's an acceptance of the demands." (Quackenbush depo., Exhibit E, Page 65, Line 4-5)

46.

On October 6, 2020, the parents of Andrew Evans filed a lawsuit styled *Christopher Evans, individually and as administrator of the estate of Andrew Evans, and Polina Denissova, individually and as administrator of the estate of Andrew Evans, v. D. Max Hirsh, Administrator of the Estate of Shannon Marie Hartsfield*, State Court of DeKalb County, Civil Action File No.: 20A82655 ("Underlying Lawsuit"). (Doc 36, p.15, ¶43)

47.

The Underlying Lawsuit proceeded to trial, and on August 2, 2023, a judgment in the amount of $14,000,000.00 was entered against Mr. Hirsh for the wrongful death claim only. (Doc 36, p.17, ¶51)

48.

Dax Lopez is a prominent attorney in the Atlanta metro area retained as an expert in this case. He describes his role as follows: "My focus in this case is what a reasonable and prudent plaintiff's attorney would do in a situation similar to the one in this case where there are numerous claimants and insufficient limits." (Lopez depo., Exhibit K, Page 38, Lines 20-25).

11

49.

Mr. Lopez encounters the situation of numerous claimants and insufficient limits "on a weekly basis." (Lopez depo., Exhibit K, Page 39, Line 3)

50.

When there are numerous claimants and insufficient limits, it creates a situation where attorneys must "race to the limits." In such a situation, and in order to best serve their cleints, a reasonable plaintiff's attorney will send a demand letter as quickly as possible. (Lopez depo., Exhibit K, Pages 47-49).

51.

In Georgia, a bad faith "set up" is where an attorney sends a demand that is difficult to accept and designed to intentionally trip up the insurance company into failing in its attempts to accept. (Lopez depo., Exhibit K, Page 62, Lines 6-24)

52.

The demand in this case was not designed to be difficult to accept and is not an attempt to "set up" DGIC. (Lopez depo., Exhibit K, Page 62 and Page 64, Lines 12-15)

Respectfully submitted August 26, 2024.

                                <u>/s/ Richard E. Dolder, Jr.</u>
                                James (Jay) Sadd
                                Georgia Bar No. 622010
                                Richard E. Dolder, Jr.
                                Georgia Bar No. 220237
                                **SLAPPEY & SADD, LLC**
                                352 Sandy Springs Circle
                                Atlanta, Georgia 30328
                                (404) 255-6677 (voice)
                                (404) 255-7460 (facsimile)
                                jay@lawyersatlanta.com
                                rich@lawyersatlanta.com
                                *Attorneys for Mr. Hirsh*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Statement of Undisputed Material Facts in Support of D. Max Hirsh's Motion for Partial Summary Judgment** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record for all parties.

I further certify that the foregoing was prepared in Times New Roman 14pt font and otherwise complies with Local Rule 5.1.

Respectfully submitted August 26, 2024.

>*/s/ Richard E. Dolder, Jr.*
>Richard E. Dolder. Jr.
>Georgia Bar No. 220237
>**SLAPPEY & SADD, LLC**
>352 Sandy Springs Circle
>Atlanta, Georgia 30328
>(404) 255-6677 (telephone)
>rich@lawyersatlanta.com
>*Attorney for Mr. Hirsh*