<u>**AFFIDAVIT OF RORY S. CHUMLEY**</u>

Personally appeared before me, the undersigned officer authorized to administer oaths, Rory S. Chumley, who first being sworn, deposes and states as follows:

1.

I, Rory S. Chumley, am over 21 and competent to execute this affidavit. The facts stated are based on personal knowledge and are true and correct.

2.

I have been licensed to practice law in Georgia since October 28, 1997 (almost 27 years). For my entire career, I have represented people who were injured by the negligence of others and helped them recover for their injuries. In the vast majority of my cases, the amount of my clients' recovery depended on the amount of liability insurance available to the person or institution that was responsible for my clients' injury. In May of 2021, I retired from the practice of law after being employed with Montlick & Associates for almost 26 years (23.5 years as an attorney and over 2 years as an employee while I was attending law school). Presently, my law license is still active and I remain, as always, in good standing with the state bar.

**EXHIBIT
D**

3.

On August 7, 2018, I was retained by Christopher Evans to handle claims for the wrongful death of his mother Nancy Evans and the wrongful death of his son Andrew Evans.  Christopher's mother and son were killed in a car accident on July 27, 2018.  Two other people in the same vehicle (driver Shannon Hartsfield and a passenger named Richie Willis) were also killed.  Occupants of another involved vehicle (three members of the Justus family) had been injured to some degree.

4.

I have experience handling claims, like this one, that involve multiple claimants.  Based on my experience, this case from the inception looked to be one that would involve insufficient insurance.  Even if the vehicle driven by Shannon Hartsfield was insured with a million dollars in coverage, and that seemed unlikely, there would not be enough insurance money to compensate the families of Nancy Evans, Andrew Evans and Richie Willis (much less include compensation for Shannon K. Justus, William Justus and Drake Justus).

5.

Many years ago, I learned that with incidents involving multiple claimants and insufficient limits, an insurer in good faith and even without notice to the other claimants could settle fewer than all claims against its insured.  Oftentimes,

an insurer will pay the claimants who first send offers to settle (especially when the claim value far exceeds the coverage), exhaust the limits, and leave other claimants without a source of recovery. Prior to August of 2018, I had personal experience with my clients being paid limits of coverage (to the exclusion of other claimants), leaving other claimants without recourse because said claimants and/or claimant's attorneys had failed to timely make a demand for payment. Prior to August of 2018, I also had personal knowledge of the reverse, clients at my firm recovering nothing because other claimants sent earlier demands.

6.

I immediately knew that it was urgent that I act to protect the interest of the family of Andrew and Nancy Evans. I knew that other claimants and/or their attorneys might also move quickly and send settlement offers that could exhaust the insurance coverage and leave the families of Andrew Evans and Nancy Evans without recourse. Most often, in cases like this, the only practical source of recovery is insurance, not individual drivers.

7.

Despite realizing that other claimants could/might be excluded from sharing in recovery from the insurance carrier, my sole obligation was to protect my client. I was not duty bound to other claimants.

3

8.

For all of these reasons, I quickly sent to Shannon Hartsfield's insurer, Direct General Insurance Company, an offer to settle Christopher's claim for the wrongful death of his son, Andrew Evans.  A true and correct copy of the August 9, 2018, offer is attached as Exhibit A.

9.

On August 7, 2018, I sent a formal request to Direct General seeking the policy limits under O.C.G.A. § 33-3-28.  A true and correct copy of that letter is attached as Exhibit B.

10.

My August 9, 2018, demand states that, at the time I sent it, Direct General had not yet divulged the amount of available insurance coverage in writing. (Exhibit A, page 5)  That statement was true.  Direct General had not sent the declarations pages in response to my August 7, 2018, request.  When I wrote the demand, I had no knowledge from any source as to what the limits might have been.  In fact, I did not receive the declarations or other written confirmation of Direct General's limits until October 8, 2018.  I did not want to state in the letter any amount until I received written confirmation of the limits.

4

11.

My offer was contingent on Direct General agreeing to have Christopher

sign a "limited release" as provided for in O.C.G.A. § 33-24-41.1.  Christopher had

UM/UIM coverage with Allstate.  If Christopher had given Direct General and its

insured a general release, he would have lost his right to recover UM proceeds

from Allstate.

12.

On August 10, 2018, I sent Allstate a demand to pay its UM/UIM limits.  A

true and correct copy of that offer, without attachments, is attached hereto as

Exhibit C.  The offer states, "We have been advised that the defendant vehicle

only had minimal coverage of $25,000.00 / $50,000.00 of liability coverage."

(Exhibit C, p.2)  That statement was true.  Kim Webb of my firm had been

informed of the Direct General policy limits over the telephone, but we had not at

that time received the written confirmation that we had requested under the

statute.  By the time I had finalized my demand of August 10, 2018, to Allstate, I

had personal knowledge that Kim Webb had been informally informed of the

Direct General coverage.

13.

Everything I wrote in the three offers attached to this affidavit were true and correct at the time I wrote them. For example, in my August 10 offer to Allstate, I stated I had sent an offer to Direct General and that I anticipated "prompt tender of the limits" in the near future. I expected Direct General to promptly accept the offer given the horrific nature of the claim.

14.

No one from Direct General ever reached out to me to seek clarification under O.C.G.A. § 9-11-67.1(d) or to ask any questions whatsoever. This solidified my expectation that an acceptance and check would come by mail as in the normal course of such claims.

15.

The first I heard from Direct General following my offer was a letter via email from attorney Michael St. Amand dated September 6, 2018. The letter unilaterally advised that a settlement conference would "take place at 10:00 am on Monday, October 8, 2018, at the offices of Gray, Rust, St. Amand, Moffett & Brieske, LLP". The letter purported to tender $50,000 to all injured claimants, lienholders and other "interested parties" and invited myself, Matthew Hagen, Jack Witcher and Glenda Mitchell (and all interested parties) to attend the

6

unilaterally set "global settlement conference" to negotiate how to divide the offered $50,000."

16.

Mr. St. Amand's letter of September 6, 2018, did <u>not</u> mention my § 9-11-67.1 offer of August 9, 2018.  The letter did <u>not</u> seek clarification or more time to respond to my demand.  As such, I viewed the September 6 letter as a rejection / counteroffer.  When I first saw it, I thought to myself, "You just changed everything."  By changing everything, I meant that I believed Direct General might have failed to accept my settlement offer negligently, or in bad faith, and was potentially liable for the full value of my client's claims.  Accordingly, I advised my client of this development.  We discussed the law and decided what to do.

17.

I attended the unilaterally set "global settlement conference" on October 8, 2018, primarily because I wanted to gather information and hear what people had to say.  In particular, I wanted to know if anyone else had sent an offer under O.C.G.A. § 9-11-67.1, so I could evaluate Direct General's potential liability for failing to accept the offer to settle the claim for Andrew's wrongful death.  I never indicated in any way, to anyone, that my purpose in attending the global settlement conference was to negotiate for an amount less than $25,000.

7

18.

At the global settlement conference, I confirmed no one else had sent any other statutory offers of settlement.

19.

I asked Mr. St. Amand why the Justus claimants and their attorney, Jack Witcher, were not there.  Mr. St. Amand advised that Jack Witcher had not responded to any of his previous letters or phone calls and had not accepted his (Mr. St. Amand's) call of the morning of October 8, 2018.  Mr. St. Amand explained the Justuses were dealing with their UM/UIM carrier and were not interested in any Direct General policy proceeds.  He said, "I guess they don't want any part of this money," or words to that effect.

20

At that time, I had still not received a written response to my August 7, 2018, statutory request to Direct General for a written confirmation of the limits.  Thus, I asked Mr. St. Amand for a declarations page.  As such, the first time I received written confirmation of the policy limits was at the global settlement conference on October 8, 2018, when Mr. St. Amand gave me same.

21.

At the global settlement conference, I said I would not advise my client to even consider an apportionment of the limited funds. No offer was made to my client at the global settlement conference. If an offer had been made, I would have called my client, who was prepared to receive my call in the event there was an offer to consider. Having learned at the global settlement conference that there had been no statutory demands under O.C.G.A. § 9-11-67.1 other than the ones I sent, and having received no offer, I decided to inform my client what I had gleaned at the meeting before proceeding further.

22.

The driver of the Justus vehicle had liability insurance with Country Financial. On August 10, 2018, I sent to Country Financial an offer to settle the claim for Andrew's wrongful death for liability policy limits. A true and correct copy of that offer, without exhibits, is attached hereto as Exhibit D. The offer to Country Financial is very similar to the offer I sent to Direct General.

23.

On August 31, 2018, I received from Country Financial's attorney a request for clarification of my offer pursuant to O.C.G.A. § 9-11-67.1(d). A true and correct copy of the request for clarification is attached hereto as Exhibit E.

9

24.

There is nothing unusual about such a request for clarification. Per my usual practice, I did my best to clear up each request for clarification. For an example, attached as Exhibit F is a true and correct copy of some of the clarification I provided.

25.

Various correspondence followed between me and Country Financial's attorney regarding the terms of settlement. We attorneys worked it out in the usual and customary manner for such claims. For example, we worked out Country Financial's concerns regarding Polina Denissova, Andrew's mother and Christopher's ex-wife. On September 10, 2018, Country Financial accepted the offer for the claim for Andrew's wrongful death. A true and correct copy of the acceptance is attached hereto as Exhibit G.

26.

When settling with Country Financial, we did not settle any claims that would have resided in Andrew's estate if an estate had been created. A true and correct copy of the release with all settlement terms is attached as Exhibit H.

27.

We did not set up an estate for Andrew prior to sending a demand because

10

it was not in my client's best interest to do so.  It would have been a waste of time

and money because, whatever the limits Direct General, Country Financial or any

other insurer had available, they would have to be paid for the wrongful death

claim only.  The wrongful death claim would not be subject to medical liens or

other recoveries from third parties, while an estate claim might.  Furthermore,

with no estate initiated with the Probate Court, I would not have had authority to

make an offer/demand on behalf of a nonexistent estate.

28.

At the time I wrote the offers described in this affidavit, I had no intent of

ever advising to set up an estate.  I thought Direct General and any other insurer

would promptly accept offers, and that there would be no other sources of

recovery, and, thus, no need to set up an estate.  The September 6 counteroffer

changed everything, which is why we later set up an estate.  Because I believed

Direct General had negligently failed to settle the wrongful death claim, there was

a potential source of recovery for an estate claim.

29.

With regard to my August, 9, 2018, offer to Direct General, I tried to give

Direct General as much time as possible to accept.  I sent the offer via fax, express

mail and Certified Mail, Return Receipt Requested.  My offer states that the date

11

on the green card from the certified mail version would control the 30-day

deadline. Thus, the 30 days did not start to run when Direct General first received

the offer via facsimile, but a week or so after when Direct General received the

certified letter.

30.

If I had wanted to increase the chance of Direct General not accepting, I

would not have also sent the offer via fax and express mail delivery, which would

have given Direct General less time respond to the offer letter that was sent via

certified mail. Furthermore, if a good faith request for an extension of time

and/or clarification had been presented, I would have responded to same.

FURTHER AFFIANT SAYETH NOT.

_____
RORY S. CHUMLEY

Sworn to and subscribed before me
this 12th day of September, 2024.

_____
Notary Public

My Commission Expires: 07-07-2026

NATHAN CAIN
NOTARY
EXPIRES
GEORGIA
July 7, 2026
PUBLIC
CHEROKEE COUNTY

12

## MONTLICK & ASSOCIATES, P.C.
### *ATTORNEYS AT LAW*

17 EXECUTIVE PARK DRIVE • SUITE 300
ATLANTA, GEORGIA • 30329

Telephone (404) 235-5000

---

## FACSIMILE TRANSMITTED DOCUMENT

Please deliver the following as soon as possible:

**TO:**            Jeanna Matoy

**FAX #:**         818009240273

**FROM:**          Kimberly Webb

**PHONE #:**       404.235.5000, ext. 275

**FROM FAX #:** 404.458.2225

**DATE:**          Thursday, August 9, 2018

**Pages including this cover page:** 18

**RE:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CONFIDENTIALITY NOTICE:  The information contained in this facsimile message is privileged
and confidential information intended for the use of the addressee listed above.  If you are neither the
intended recipient nor the employee nor agent responsible for delivering this message to the intended
recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in
regard to the contents of this photocopied information is strictly prohibited.  If you have received this
facsimile in error, please notify us immediately by telephone and we will arrange for the documents
to be returned.  Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LTR_004::ndls

**EXHIBIT**

**A**

DGIC 001318

David R. Montlick
Alan Y. Saltzman°
Kathy Opperman°¹

Jonathan B. Pierce
Orlando A. Marra *ᶠᴸ
Patrick R. Matarrese
Rory S. Chumley
Michael N. Rubin *ᴹᴰ
Lynn S. Walker
Michael J. Moran
Kimberly L. Jacobsen
Joel H. Roth *ᴺʸ
Richard K. Warner *ᴺʸ
D. Jeffrey Beaird *ᴬᴸ, ᵀᴺ
Jeffrey S. Kowalski
Christopher R. Ostolski
Joel E. Hausman * ᴾᴬ
Ramon W. Palanca, Jr.
Margaret K. Grenleski
Nathan A. Kratzert

# MONTLICK & ASSOCIATES, P.C.

*ATTORNEYS AT LAW*

17 EXECUTIVE PARK DRIVE • SUITE 300
ATLANTA, GEORGIA • 30329

TELEPHONE (404) 529-6333 • FACSIMILE (404) 321-5323
Montlick.com

Jason A. Saltzman
Craig W. LaChanse
Aaron N. Monick *ᵀᴺ
Jennifer J. Fleming *ᴺᴶ, ᴾᴬ
Alyssa A. Martins
Sara E. Root
Faris Zejnelovic
Sarah D. Neeland
Benjamin V. Copeland
Helen Suh Hopkins *ᶠᴸ
Nora-Jane Roberts-Williams
Douglas J. Glosser
Sharon Chester Barnes
William A. Parker, Jr.*ᴾᴬ, ˢᶜ
Alexander J. Tertichny
Heather L. McPhillip
Thomas M. Cristadoro
Wayne C.J. Washington *ᶠᴸ
Michelle G. Mumpower
Nives R. Juric

° Managing Attorney
¹ also admitted in NY, NJ, & N.S.W.
* also admitted in other state(s)

August 9, 2018

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
Ms. Jeanna Matoy
Direct General Insurance
P.O. Box 1623
Winston Salem, NC 27102

**U.S. POSTAL SERVICE EXPRESS MAIL**
Ms. Jeanna Matoy
Direct General Insurance
P.O. Box 1623
Winston Salem, NC 27102

**VIA FACSIMILE** (800) 924-0273
Ms. Jeanna Matoy
Direct General Insurance

|  | RE: | Our Client: | Christopher Evans, surviving parent of **Andrew Evans, Deceased** |
|--|-----|-------------|----|
|  |  | Incident Date: | July 27, 2018 |
|  |  | Defendant Driver: | Shannon Hartsfield, Deceased |
|  |  | Your Insured: | Roger Hartsfield |
|  |  | Your Claim #: | 3433126 |

Dear Ms. Matoy:

This law firm represents the interests of Mr. Christopher Evans as surviving father of Andrew Evans (deceased). We represent Mr. Christopher Evans in a claim against your insured, Shannon Hartsfield (permissive driver), for the wrongful death of Andrew Evans. Andrew Evans was killed due to the negligence of defendant Hartsfield on July 27, 2018.

DGIC 001319

Ms. Matoy
Page 2

Pursuant to O.C.G.A. § 9-11-67.1, we are providing to you a reasonable opportunity to settle Christopher Evans' claims (wrongful death of Andrew Evans) against Shannon Marie Hartsfield and/or the Estate of Shannon Marie Hartsfield arising out of the above-referenced motor vehicle collision for an amount within policy limits to the extent provided in the attached limited liability release. By timely accepting this offer, you will protect Shannon Marie Hartsfield and/or the Estate of Shannon Marie Hartsfield from responsibility to pay an excess judgment; protracted litigation (not including that which may be necessary to make other insurance claims); the time and expense of attending depositions, participating in discovery and attending trial; litigation costs and attorneys' fees; and other losses typically caused by a failure to timely settle claims.

## LIABILITY

Andrew Evans died on Wednesday, July 27, 2018. But for Shannon Marie Hartsfield's negligence, Andrew would be with us today.

Without question, Shannon Marie Hartsfield was at fault for this incident. Per the police report Ms. Hartsfield was **at fault for traveling into an intersection without stopping at a posted stop sign.** The diagram below depicts what occurred:



Considering the facts and circumstances of this incident, liability is clear and should not be an issue in resolving this matter.

DGIC 001320

Ms. Matoy
Page 3

### WRONGFUL DEATH OF ANDREW EVANS

Several statutes are relevant to evaluating this claim

**O.C.G.A. § 51-4-1** sets forth:

*As used in this chapter, the term:*

*(1) 'Full value of the life of the decedent, as shown by the evidence' means the full value of the life of the decedent without deducting for any of the necessary or personal expenses of the decedent had she lived.*

*(2) **'Homicide' includes all cases in which the death of a human being results from a crime, from criminal or other negligence**, or from property which has been defectively manufactured, whether or not as the result of negligence.*

**O.C.G.A. § 51-4-4** sets forth:

*The right to recover for the **homicide of a child** shall be as **provided in Code Section 19-7-1.***

**O.C.G.A. § 19-7-1** sets forth in part the following:

*...(c)(1) **In every case of the homicide of a child, minor or sui juris, there shall be some party entitled to recover the full value of the life of the child, either as provided in this Code section or as provided in Chapter 4 of Title 51.***

*(2) **If the deceased child does not leave a spouse or child, the right of recovery shall be in the parent or parents, if any, given such a right by this paragraph as follows:***

*(A) If the parents are living together and not divorced, the right shall be in the parents jointly;*

*(B) If either parent is deceased, the right shall be in the surviving parent; or*

*(C) **If both parents are living but are divorced, separated, or living apart, the right shall be in both parents**. However, if the parents are divorced, separated, or living apart and one parent refuses to proceed or cannot be located to proceed to recover for the wrongful death of a child, the other parent shall have the right to contract for representation on behalf of both parents, thereby binding both parents, and the right to proceed on behalf of both parents to recover for the homicide of the child with any ultimate recovery to be shared by the parents as provided in this subsection. Unless a motion is filed as provided in paragraph (6) of this subsection, such a judgment shall be divided equally between the parents by the judgment; and the share of an absent parent shall be held for such time, on such terms, and with such direction for payment if the absent parent is not found as the judgment directs. Payment of a judgment awarded to the parent or parents having the cause of action under this subparagraph or the execution of a release by a parent or parents having a cause of action under this subparagraph shall constitute a full and complete discharge of the judgment debtor or releasee. If, after two years from the*

Ms. Matoy
Page 4

*date of any recovery, the share of an absent parent has not been paid to the absent parent, the other parent can petition the court for the funds, and the recovery, under appropriate court order, shall be paid over to the parent who initiated the recovery.*

*(3) **The intent of this subsection is to provide a right of recovery in every case of the homicide of a child who does not leave a spouse or child.** If, in any case, there is no right of action in a parent or parents under the above rules, the right of recovery shall be determined by Code Section 51-4-5.*

*(4) **In this subsection the terms 'homicide' and 'full value of the life' shall have the meaning given them in Chapter 4 of Title 51.***

*(5) In actions for recovery, the fact that the child was born out of wedlock shall be no bar to recovery...*

In light of the above, we inform you that we have **not** set up an "Estate" on behalf of Andrew Evans and we will **not** be setting up an Estate in the future. The above statute allows the surviving parent / father (since Andrew died unmarried and without children) to proceed against Shannon Marie Hartsfield and/or Estate of Shannon Marie Hartsfield for an "action for wrongful death" on behalf of the parent of Andrew Evans for the full value of his life. **Andrew was only 6 years old.**

The following shows the parents of the deceased:

| Name | Age | Relationship |
|------|-----|--------------|
| Christopher Evans | 34 | Father |
| Polina Denissova | 36 | Mother |

Mr. Christopher Evans is under contract with Montlick & Associates, P.C. Mr. Christopher Evans has instructed our firm to bring this claim for wrongful death pursuant to O.C.G.A. § 51-4-1, O.C.G.A. § 51-4-4 and O.C.G.A. § 19-7-1.

### SETTLEMENT PROPOSAL

Pursuant to O.C.G.A. § 51-4-1, O.C.G.A. § 51-4-4 and O.C.G.A. § 19-7-1, on behalf of Christopher Evans (the surviving parent / father of Andrew Evans), we hereby demand written tender of all available insurance funds. Tender would be for the wrongful death of Andrew Evans. Available insurance would include any policy of insurance that would afford insurance for this event inclusive of but not limited to:

A) The full policy of insurance on the vehicle (1996 Toyota Avalon, VIN # 4T1BF12B7TU100858) driven by Shannon Marie Hartsfield on July 27, 2018 (since your company has not divulged said coverage amount in writing, we will use the figure of *$100,000.00 for example purposes only*. Of course, if the limit of coverage is higher than this amount, our demand will be for said higher amount;

Ms. Matoy
Page 5

B) As detailed in items "1" – "6" below (with particular attention to "6 (a-e)", we also demand tender of "ALL AVAILABLE INSURANCE FUNDS" that would include any other bodily injury liability funds that would cover this event.

Pursuant to O.C.G.A. § 9-11-67.1 and on behalf of Christopher Evans, surviving son of Andrew Evans, we are providing a reasonable opportunity to settle the claims against your client under the following terms, as well as those set forth above and in the attached limited liability release:

(1) You have 30 days from your receipt of this offer to accept it. The 30-day period shall be conclusively established by the green return-receipt-requested postcard provided by the U.S. postal service.

If we do not actually receive a timely acceptance, this offer will be deemed rejected, and we will file a lawsuit against Shannon Marie Hartsfield and/or the Estate of Shannon Marie Hartsfield to recover the total amount of losses caused by Shannon Marie Hartsfield's negligence, instead of the limited amount afforded by relevant insurance coverage and other coverage that may be available. We must insist that you reply to this correspondence in writing. Please provide written tender of ALL AVAILABLE INSURANCE FUNDS that would include written proof of the actual insurance coverage involved. Please respond via email to rory@montlick.com **and** via facsimile to (678)651-1316.

**(1)** Payment in the amount of $100,000.00 ÷ the amount of "ALL AVAILABLE INSURANCE FUNDS" must be made payable to Christopher Evans and Montlick & Associates, P.C. (Tax ID# 58-1570193) within ten (10) days after your written acceptance of this offer to settle (with immediate overnight delivery or courier delivery to our firm at 17 Executive Park Drive, Suite 300, Atlanta, Georgia 30329). **Timely payment is an essential element of acceptance.**

(2) Shannon Marie Hartsfield and/or the Estate of Shannon Marie Hartsfield will be released from liability subject to the limited liability release attached that all agree are in accordance with provisions set forth in O.C.G.A. § 33-24-41.1.

(3) The type of release offered is the attached limited liability release. See attached Exhibit "B".

(4) The claims released by accepting this offer are all wrongful death claims against Shannon Marie Hartsfield and/or the Estate of Shannon Marie Hartsfield, subject to the terms of the attached limited liability release.

(5) "ALL AVAILABLE INSURANCE FUNDS" would include any policy of insurance that would afford insurance for this event inclusive of but not limited to:

a) The full policy of insurance on the vehicle (1996 Toyota Avalon, VIN # 4T1BF12B7TU100858) driven by Shannon Marie Hartsfield on July 27, 2018. Of course, if the limit of coverage is higher than this amount, our demand will be for said higher amount;

Ms. Matoy
Page 6

b)      The full policy limit of insurance of any other vehicle or other viable insurance that was in effect on July 27, 2018 and would provide coverage in relationship to this event. Inclusive of but not limited to:

    i)      any other vehicle that Shannon Marie Hartsfield is named as an insured or considered as an insured due to marital status or other family relationship;

    ii)     any other vehicle of a relative(s) of Shannon Marie Hartsfield who was of his same residence (household) on July 27, 2018;

    iii)    Any relevant vehicle umbrella policy that would afford coverage to Shannon Marie Hartsfield for this collision;

c)      The full policy limit of insurance for any umbrella coverage via any relevant homeowners, corporation or business insurance that would afford coverage to Shannon Marie Hartsfield for this collision.

**d)      IF IT IS ALLEGED** that the only policy that covers this event is the Direct General Insurance Policy on the vehicle 1996 Toyota Avalon, VIN # 4T1BF12B7TU100858) driven by Shannon Marie Hartsfield on July 27, 2018 (believed to be policy # GABD5900034) we will then require, as part of your written response to this letter, **affidavits from the following persons / entities (inclusive of but not limited to) attesting to same:**

    **i)      Roger Lamar Hartsfield;**

    **ii)     Any person(s) living in the household(s) of Shannon Marie Hartsfield on July 27, 2018;**

    **iii)    A representative from Direct General attesting to same. Furthermore, we will need Direct General to produce a copy of the policy and relevant declarations page(s) to establish the limit of available liability coverage.**

The above referenced affidavits are paramount to your compliance with this settlement demand. Said affidavits **must** be attached to your written response. **ANY RESPONSE WITHOUT THE REQUESTED AFFIDAVITS ATTACHED TO SAME WILL BE DEEMED A COUNTER OFFER AND WE WILL HAVE NO CHOICE BUT TO FILE SUIT. THUS, DO NOT TAKE LIGHTLY YOUR DUTY TO SPEAK WITH YOUR INSURED (AND ANY PERSON(s) OR ENTITY NAMED ABOVE OR IN "i" – "iii" ABOVE) TO FIND OUT ALL THE VEHICLES GARAGED IN SHANNON MARIE HARTSFIELD'S HOME, INSURED IN HER NAME (OR THE NAME OF A FAMILY MEMBER) OR ANY OTHER POLICY OF INSURANCE THAT WOULD COVER DEFENDANT SHANNON MARIE HARTSFIELD FOR HER NEGLIGENCE ON JULY 27, 2018.**

Ms. Matoy
Page 7

    e)    Please advise if the bodily injury liability coverage has been reduced <u>by payment for other claims</u>, please forward written proof of coverage, with additional proof showing payments made to diminish said liability property coverage as part of your response to this correspondence.

*I have attached a copy of a DRAFT limited liability release* (attached as <u>Exhibit "B"</u>) *that I have used in the past* (a prior settlement with a defendant insurance carrier on similar issue). THIS DRAFT IS ATTACHED FOR EXAMPLE PURPOSES ONLY AND ASSUMES A BODILIY INJURY LIMIT OF $100,000.00.  AS STATED PREVIOUSLY IN THIS CORRESPONDENCE, IF THE LIMIT OF COVERAGE IS HIGHER THAN $100,000.00, OUR DEMAND WILL BE FOR WHATEVER THAT AMOUNT MAY BE IN THIS INSTANCE.

This letter is written in the spirit of compromise and settlement.  Any statements or propositions contained herein are not proper evidence and are inadmissible in a court of law.

We look forward to hearing from you in the near future regarding the final resolution of this matter.  I can be reached at (404) 235-5000.  With best regards,

                    Very truly yours,

                    MONTLICK & ASSOCIATES, P.C.

BY:          _____

                    RORY S. CHUMLEY
                    Attorney at Law

LTR_028:654889:ndls
Enclosures

DGIC 001325

# MONTLICK & ASSOCIATES, P.C.

*ATTORNEYS AT LAW*

17 EXECUTIVE PARK DRIVE • SUITE 300
ATLANTA, GEORGIA • 30329

Telephone (404) 235-5000

## FACSIMILE TRANSMITTED DOCUMENT

Please deliver the following as soon as possible:

**TO:**      Jeanna Matoy

**FAX #:**      818009240273

**FROM:**      Kimberly Webb

**PHONE #:**      404.235.5000, ext. 275

**FROM FAX #:** 404.458.2225

**DATE:**      Tuesday, August 7, 2018

**Pages including this cover page:** 03

**RE:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CONFIDENTIALITY NOTICE:  The information contained in this facsimile message is privileged and confidential information intended for the use of the addressee listed above.  If you are neither the intended recipient nor the employee nor agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in regard to the contents of this photocopied information is strictly prohibited.  If you have received this facsimile in error, please notify us immediately by telephone and we will arrange for the documents to be returned.  Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LTR_004::ndls

| EXHIBIT |
| B |

DGIC 001293

# MONTLICK & ASSOCIATES, P.C.

*ATTORNEYS AT LAW*

17 EXECUTIVE PARK DRIVE • SUITE 300
ATLANTA, GEORGIA • 30329

TELEPHONE (404) 235-5000 • FACSIMILE (404) 321-5323
www.montlick.com

August 7, 2018

**VIA CERTIFIED MAIL - RETURN RECEIPT**  (800) 924-0273
Ms. Jeanna Matoy
Direct General Insurance
P.O. Box 1623
Winston Salem, NC  27102

|  | RE: | Our Client: | Christopher Evans, surviving parent of **Andrew Evans, Deceased** |
|---|---|---|---|
|  |  | Incident Date: | July 27, 2018 |
|  |  | Defendant Driver: | Shannon Hartsfield, Deceased |
|  |  | Your Insured: | Roger Hartsfield |
|  |  | Your Claim #: | 3433126 |

Dear Ms. Matoy:

Enclosed please find a pre-suit disclosure affidavit. We would appreciate your notifying our office with the relevant information at your earliest convenience.

If you should have any questions or comments regarding the enclosed affidavit, please feel free to contact our office. We look forward to your response.

Very truly yours,

MONTLICK & ASSOCIATES, P.C.

BY: _____
Rory S. Chumley
Attorney at Law

LTR_1098b:654889:ndls
Enclosure:    Pre-suit Disclosure Affidavit

DGIC 001294

STATE OF GEORGIA
COUNTY OF DEKALB

## REQUEST FOR PRE-SUIT DISCLOSURE OF POLICY LIMITS

Montlick & Associates, P.C. represents Mr. Christopher Evans, surviving parent of of Andrew Evans, Deceased with a claim for injuries, damages and wrongful death he sustained in an incident which occurred on July 27, 2018. We are in the process of investigating and evaluating this claim. It is our understanding that you insured Roger Hartsfield, a person or company who may be liable for payment to our client for this incident.

Pursuant to O.C.G.A. §33-3-28 (a) (1), we hereby request that you provide a statement under oath of a corporate officer or the claims manager stating with regard to each known policy of insurance issued by it, including but not limited to motor vehicle insurance, homeowner's insurance, excess or umbrella insurance, the name of the insurer, the name of each insured, and the limits of coverage. You may provide a copy of the declarations page of each such policy in lieu of providing such information.

Rory S. Chumley
Attorney at Law

Sworn to and subscribed before me this
7th day of August, 20 18

NOTARY PUBLIC

1098c:654888:ndls

KIMBERLY WEBB
NOTARY
EXPIRES
GEORGIA
06/12/2022
PUBLIC
COWETA COUNTY

# MONTLICK & ASSOCIATES, P.C.
## *ATTORNEYS AT LAW*

17 EXECUTIVE PARK DRIVE • SUITE 300
ATLANTA, GEORGIA • 30329

TELEPHONE (404) 529-6333 • FACSIMILE (404) 321-3323
Montlick.com

David R. Montlick
Alan Y. Saltzman°
Kathy Opperman°¹

Jonathan B. Pierce
Orlando A. Marra *FL
Patrick R. Matarrese
Rory S. Chumley
Michael N. Rubin *MD
Lynn S. Walker
Michael J. Moran
Kimberly L. Jacobsen
Joel H. Roth *NY
Richard K. Warner *NY
D. Jeffrey Beaird *AL, TN
Jeffrey S. Kowalski
Christopher R. Ostolski
Joel E. Hausman * PA
Ramon W. Palanca, Jr.
Margaret K. Grenleski
Nathan A. Kratzert

Jason A. Saltzman
Craig W. LaChanse
Aaron N. Monick *TN
Jennifer J. Fleming *NJ, PA
Alyssa A. Martins
Sara E. Root
Faris Zejnelovic
Sarah D. Neeland
Benjamin V. Copeland
Helen Suh Hopkins*FL
Nora-Jane Roberts-Williams
Douglas J. Glosser
Sharon Chester Barnes
William A. Parker, Jr.* PA, SC
Alexander J. Tertichny
Heather L. McPhillip
Thomas M. Cristadoro
Wayne C.J. Washington *FL
Michelle G. Mumpower
Nives R. Juric

° Managing Attorney
¹ also admitted in NY, NJ, & N.S.W.
* also admitted in other state(s)

August 10, 2018

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
Express Team
AllState Insurance Company
P.O. Box 650506
Dallas, TX 75265

**VIA U.S.P.S EXPRESS MAIL**
Express Team
AllState Insurance Company
P.O. Box 650506
Dallas, TX 75265

RE:     **POLICY LIMITS DEMAND**
           **Request to Compromise UIM Claim**
           <u>Andrew Evans v. Shannon Hartsfield</u>
           Our Client:      Christopher Evans, surviving parent
                                of **<u>Andrew Evans, Deceased</u>**
           Incident Date:      July 27, 2018
           Defendant Driver:   Shannon Hartsfield, Deceased
           Your Insured:       Christopher Evans

           **Allstate Policy #:   815026793**
           **Your Claim #:**              0512729948

           **Allstate Policy #:   815006085**
           **Your Claim #:**              0512725805

Dear Sir or Madam:

This law firm represents the interests of Mr. Christopher Evans as surviving father of Andrew Evans (deceased).  We represent Mr. Christopher Evans in a claim against, Shannon Hartsfield (permissive driver), for the wrongful death of Andrew Evans.  Andrew Evans was killed due to the negligence of defendant Hartsfield on July 27, 2018.

```
EXHIBIT
C
```

CE0000 23

Re: Wrongful Death of Andrew Evans
Page 2

Pursuant to O.C.G.A. § 9-11-67.1, we have made a demand upon the liability carrier, Direct General Insurance Company ("Direct"). We anticipate prompt tender in the near future. Our demand was made on August 9, 2018 and we anticipate a response on or before September 9, 2018. Direct has secured the assistance of the following claims handler:

Ms. Jeanna Matoy
Direct General Insurance
P.O. Box 1623
Winston Salem, NC 27102
Phone: (469) 680-0389
Fax:    (800) 924-0273
Direct General Insured / Claim #:    Roger Hartsfield / 3433126

## LIABILITY

Andrew Evans died on Wednesday, July 27, 2018. But for Shannon Marie Hartsfield's negligence, Andrew would be with us today. Without question, Shannon Marie Hartsfield was at fault for this incident. Per the police report Ms. Hartsfield was **at fault for traveling into an intersection without stopping at a posted stop sign.** The diagram below depicts what occurred:



Considering the facts and circumstances of this incident, liability is clear and should not be an issue in resolving this matter.

## UNDERINSURED MOTORIST CLAIM

Direct General Insurance Company insured the 1996 Toyota Avalon (VIN # 4T1BF12B7TU100858) driven by defendant Shannon Marie Hartsfield on July 27, 2018. We have been advised that the defendant vehicle only had minimal coverage of $25,000.00 / $50,000.00 of liability coverage. Considering the fact that all three passengers in the defendant's vehicle (Andrew Evans, Nancy Evans and Richie Willis) were killed as a result of the collision, defendant Hartsfield (the at-fault driver also died in the crash) is severely underinsured in this instance.

CE0000 24

Re: Wrongful Death of Andrew Evans
Page 3

We have made a demand for Direct General Insurance Company (liability carrier) to tender $25,000.00 for the wrongful death of Andrew Evans. We anticipate prompt tender of the limits of bodily injury coverage of $25,000.00 via a statutory limited liability release in the near future. As soon as I have proof of tender of said coverage from the liability carrier, I will forward same to your attention. In the interim, Christopher Evans, as surviving parent / father of Andrew Evans, has requested that I go ahead and make a written demand for tender of all available UIM coverage at this time.

In the event the offending driver is operating an uninsured and / or underinsured motor vehicle, the injured insured may pyramid or stack the UIM coverage of all available UM policies and recover to the extent of his damages (see Georgia Farm Bureau Co. v. Allstate Mutual Insurance Co., 255 Ga. 166 (1985)). In other words, where the tortfeasor is completely uninsured *or severely underinsured as in this instance*, an insured may stack two or more policies of underinsured motorist coverage to recover an actual loss within the aggregate limits of the multiple policies. The statutory authorization for stacking UM coverage in Georgia is O.C.G.A § 33-7-11(b)(1)(D)(ii).

Under Georgia law, resident relatives of the named insured or the spouse of the named insured are insured persons under the named insured's UM coverage "while in a motor vehicle or otherwise" (see O.C.G.A § 33-7-11(b)(1)(B)). On the date of the collision, six-year-old Andrew Evans resided with his father, Mr. Christopher Evans. As such, insurance coverage for any/all vehicles in his household are relevant to the incident and provide coverage.

The following is a list of all vehicles covered by Allstate Insurance Company on the date of the incident and what is currently believed to be the coverages on each vehicle *(As of today, we have yet to receive written proof of coverage directly from Allstate. However, we have obtained copies of coverage documents from Christopher Evans)*:

| Vehicle / Policy Number | Type of Coverage | Per person Limit of Coverage |
|---|---|---|
| 2012 Ford Truck F150 2wd<br><br>**POLICY NUMBER**<br><br>**815 006 085** | **Allstate UIM "Excess Limits"**<br><br>See attached **Exhibit "A"** | $100,000.00 |
| 2017 Ktm 690 Duke<br>2006 Aprilia Rs 125<br>**POLICY NUMBER**<br>**815 026 793** | **Allstate UIM "Excess Limits"**<br><br>See attached **Exhibit "A"** | $100,000.00 |
| **TOTAL STACKABLE UIM COVERAGE** | | **$200,000.00** |

**CE0000 25**

Re: Wrongful Death of Andrew Evans
Page 4

Considering the above, with regard to the claim of Mr. Christopher Evans as surviving parent / father of Andrew Evans (deceased), *at a minimum* Allstate Insurance would be responsible for at least $200,000.00 in coverage for stackable UIM benefits. Of course, we will need to review written proof of coverage prior to finalizing this matter.

## WRONGFUL DEATH OF ANDREW EVANS

Several statutes are relevant to evaluating this claim

**O.C.G.A. § 51-4-1** sets forth:

*As used in this chapter, the term:*

*(1) 'Full value of the life of the decedent, as shown by the evidence' means the full value of the life of the decedent without deducting for any of the necessary or personal expenses of the decedent had she lived.*

*(2) **'Homicide' includes all cases in which the death of a human being results from a crime, from criminal or other negligence**, or from property which has been defectively manufactured, whether or not as the result of negligence.*

**O.C.G.A. § 51-4-4** sets forth:

*The right to recover for the **homicide of a child** shall be as **provided in Code Section 19-7-1.***

**O.C.G.A. § 19-7-1** sets forth in part the following:

*...(c)(1) **In every case of the homicide of a child, minor or sui juris, there shall be some party entitled to recover the full value of the life of the child, either as provided in this Code section or as provided in Chapter 4 of Title 51.***

*(2) **If the deceased child does not leave a spouse or child, the right of recovery shall be in the parent or parents, if any, given such a right by this paragraph as follows:***

*(A) If the parents are living together and not divorced, the right shall be in the parents jointly;*

*(B) If either parent is deceased, the right shall be in the surviving parent; or*

*(C) **If both parents are living but are divorced, separated, or living apart, the right shall be in both parents.** However, if the parents are divorced, separated, or living apart and one parent refuses to proceed or cannot be located to proceed to recover for the wrongful death of a child, the other parent shall have the right to contract for representation on behalf of both parents, thereby binding both parents, and the right to proceed on behalf of both parents to recover for the homicide of the child with any ultimate recovery to be shared by the parents as provided in this subsection. Unless a motion is filed as provided in paragraph (6) of this subsection, such a judgment shall be divided equally between the parents by the judgment; and the share of an absent parent shall be held for such time, on such terms, and with such direction for payment if*

CE0000 26

Re: Wrongful Death of Andrew Evans
Page 5

*the absent parent is not found as the judgment directs. Payment of a judgment awarded to the parent or parents having the cause of action under this subparagraph or the execution of a release by a parent or parents having a cause of action under this subparagraph shall constitute a full and complete discharge of the judgment debtor or releasee. If, after two years from the date of any recovery, the share of an absent parent has not been paid to the absent parent, the other parent can petition the court for the funds, and the recovery, under appropriate court order, shall be paid over to the parent who initiated the recovery.*

**(3) *The intent of this subsection is to provide a right of recovery in every case of the homicide of a child who does not leave a spouse or child.*** *If, in any case, there is no right of action in a parent or parents under the above rules, the right of recovery shall be determined by Code Section 51-4-5.*

**(4) *In this subsection the terms 'homicide' and 'full value of the life' shall have the meaning given them in Chapter 4 of Title 51.***

*(5) In actions for recovery, the fact that the child was born out of wedlock shall be no bar to recovery...*

In light of the above, we inform you that we have **not** set up an "Estate" on behalf of Andrew Evans and we will **not** be setting up an Estate in the future. The above statute allows the surviving parent / father (since Andrew died unmarried and without children) to proceed against Shannon Marie Hartsfield and/or Estate of Shannon Marie Hartsfield for an "action for wrongful death" on behalf of the parent of Andrew Evans for the full value of his life. **Andrew was only 6 years old**.

The following shows the parents of the deceased:

| Name | Age | Relationship |
|------|-----|--------------|
| Christopher Evans | 34 | Father |
| Polina Denissova | 36 | Mother |

Mr. Christopher Evans is under contract with Montlick & Associates, P.C. Mr. Christopher Evans has instructed our firm to bring this claim for wrongful death pursuant to <u>O.C.G.A.</u> § 51-4-1, <u>O.C.G.A.</u> § 51-4-4 and <u>O.C.G.A.</u> § 19-7-1.

## SETTLEMENT PROPOSAL

In light of wrongful death of Andrew Evans that resulted due to Shannon Hartsfield's negligence, we hereby demand <u>written tender of all available bodily injury UIM insurance funds</u>. Tender would be for the wrongful death of Andrew Evans. Available insurance would include any policy of insurance that would afford insurance for this event inclusive of but not limited to: TWO HUNDRED THOUSAND DOLLARS ($200,000.00) or all of the available UM / UIM coverage with Allstate Insurance Company as outlined earlier in the correspondence. This demand is being made pursuant to O.C.G.A. § 33-7-11(j), which states in pertinent part: "If the insurer shall refuse to pay any insured any loss covered by this Code section within 60 days after

**CE0000 27**

Re: Wrongful Death of Andrew Evans
Page 6

a demand has been made by the insured and a finding has been made that such refusal was made in bad faith, the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery and all reasonable attorneys' fees for the prosecution of the case under this Code section." The 60-day period shall be conclusively established by the green return-receipt-requested postcard provided by the U.S. postal service.

Our demand will remain open for 60 days as required by the statute. If you have not confirmed in writing your acceptance of our demand before the expiration of the 60-day period, then the demand will expire and will be withdrawn and can no longer be accepted. We believe that this demand is more than fair given the defendant's clear liability and the resulting death of Andrew Evans. This letter is an offer to compromise a claim and is inadmissible in any subsequent litigation. O.C.G.A. § 24-3-37.

Although O.C.G.A. § 33-7-11(j) allows the UIM carrier 60 days to respond, **as a courtesy to your insured, we ask that you respond with tender of coverage as soon as possible**. Please make all checks and / or drafts payable to Mr. Christopher Evans and Montlick & Associates, P.C. (Tax ID# 58-1570193) and **mail to 17 Executive Park Drive, Suite 300, Atlanta, Georgia 30329**. Payment in any other form would be unacceptable.

This letter is written in the spirit of compromise and settlement. Any statements or propositions contained herein are not proper evidence and are inadmissible in a court of law. All of the enclosed materials shall remain the property of our client and shall be returned to her upon request.

We look forward to hearing from you in the near future regarding the final resolution of this matter. I can be reached at (404) 235-5000. With best regards,

Very truly yours,

MONTLICK & ASSOCIATES, P.C.

BY: _____
    RORY S. CHUMLEY
    Attorney at Law

LTR_028:654889:ndls
Enclosures

**CE0000 28**

# MONTLICK & ASSOCIATES, P.C.

*ATTORNEYS AT LAW*

17 EXECUTIVE PARK DRIVE • SUITE 300
ATLANTA, GEORGIA • 30329

TELEPHONE (404) 529-6333 • FACSIMILE (404) 321-3323
Montlick.com

David R. Montlick
Alan Y. Saltzman°
Kathy Opperman°¹

Jonathan B. Pierce
Orlando A. Marra *FL
Patrick R. Matarrese
Rory S. Chumley
Michael N. Rubin *MD
Lynn S. Walker
Michael J. Moran
Kimberly L. Jacobsen
Joel H. Roth *NY
Richard K. Warner *NY
D. Jeffrey Beaird *AL, TN
Jeffrey S. Kowalski
Christopher R. Ostolski
Joel E. Hausman * PA
Ramon W. Palanca, Jr.
Margaret K. Grenleski
Nathan A. Kratzert

Jason A. Saltzman°
Craig W. LaChanse
Aaron N. Monick *TN
Jennifer J. Fleming *NJ, PA
Alyssa A. Martins
Sara E. Root
Faris Zejnelovic
Sarah D. Neeland
Benjamin V. Copeland
Helen Suh Hopkins*FL
Nora-Jane Roberts-Williams
Douglas J. Glosser
Sharon Chester Barnes
William A. Parker, Jr.* PA, SC
Alexander J. Tertichny
Heather L. McPhillip
Thomas M. Cristadoro
Wayne C.J. Washington *FL
Michelle G. Mumpower
Nives R. Juric

° Managing Attorney
¹ also admitted in NY, NJ, & N.S.W.
* also admitted in other state(s)

August 10, 2018

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
Ms. Charlotte Arnold
Country Financial Insurance Company
P.O. Box 2020
Bloomington, IL  61702-2020

**VIA U.S.P.S EXPRESS MAIL**
Ms. Charlotte Arnold
Country Financial Insurance Company
P.O. Box 2020
Bloomington, IL  61702-2020

RE:    Our Client:     Christopher Evans, surviving father
of **Andrew Evans, Deceased**
Incident Date:     July 27, 2018
Your Insured:     Shannon Justus
Your Claim #:     303-0013806

Dear Ms. Arnold:

This law firm represents the interests of Mr. Christopher Evans as surviving father of Andrew Evans (deceased).  We represent Mr. Christopher Evans in a claim against your insured, Shannon Justus, for the wrongful death of Andrew Evans.  Mr. Andrew Evans was killed due to the negligence of defendant Justus on July 27, 2018.  Pursuant to O.C.G.A. § 9-11-67.1, we are providing to you a reasonable opportunity to settle Christopher Evans' claims (wrongful death of Andrew Evans) against Shannon K. Justus arising out of the above-referenced motor vehicle collision for an amount within policy limits to the extent provided in the attached limited liability release.  By timely accepting this offer, you will protect Shannon K. Justus from responsibility to pay an excess judgment; protracted litigation (not including that which may be necessary to make other insurance claims); the time and expense of attending depositions, participating in discovery and attending trial; litigation costs and attorneys' fees; and other losses typically caused by a failure to timely settle claims.

## LIABILITY / FACTS

Andrew Evans died on Wednesday, July 27, 2018.  But for Shannon K. Justus' negligence, Andrew would be with us today.

This incident occurred at approximately 2:32pm on Friday, July 27, 2018.  It was a **clear sunny day**.  The **roads were dry.**

**EXHIBIT
D**

**CE0000 197**

Ms. Arnold
Page 2

Your insured, Mr. Shannon K. Justus was driving a 2004 Ford F150 FX4 Crew Cab pickup truck. He was traveling eastbound on State Route 140. The speed limit on this roadway is 55 miles per hour. It remains our belief that **Mr. Justus was <u>travelling in excess of the speed limit</u>**.

Forty-one (41) year old Shannon Marie Hartsfield was operating a 1996 Toyota Avalon. Passengers in Shannon Marie Hartsfield's vehicle included: <u>Andrew Evans</u>, <u>Nancy Evans</u> and <u>Richie Willie</u>. **<u>All of the occupants</u>** of the Toyota driven by Ms. Hartsfield were **<u>killed as a result of the collision.</u>**

According to the police report, an independent witness (who notably was travelling behind your insured driver, Shannon Justus) advised the investigating officer that Shannon Hartsfield traveled into the intersection, without stopping at a posted stop sign or slowing her vehicle. The witness is identified as Mark Prynkiewicz (a South Carolina resident).

Ms. Hartsfield was entering a straight, clear, unobstructed section of State Route 140. Your insured was traveling east on State Route 140. As indicated in the narrative provided within the attached police report, your insured alleges that he did not see Ms. Hartfield's vehicle enter the roadway. However, **the witness BEHIND YOUR INSURED told the police that he saw the vehicle. Likewise, your insured had a VERY CLEAR opportunity to see the vehicle entering the roadway.**

The color photograph below depicts **<u>your insured's</u>** (Mr. Shannon Justus) **<u>view</u>** as he approached the intersection where the deadly collision occurred:



Ms. Arnold
Page 3

The **color photograph below** also shows **the clear view your insured had approaching the intersection** (The red vehicle in the upper left of the photo below accurately depicts the direction of travel and approach your insured took on the date of the collision. Furthermore, the bottom right corner of the photo below is the intersection where the incident occurred.)



The diagram below is taken from the police report:



CE0000 199

Ms. Arnold
Page 4

In light of the force of impact (indicative of your insured's high rate of speed) and the clear unobstructed view your insured had approaching the intersection, there is a VERY GREAT likelihood that a jury would find your insured to be partially at fault for the incident. What we know for certain is that **six-year-old Andrew Evans had absolutely zero fault in the collision**. As a passenger, Andrew did NO WRONG.

Was your insured 75% at fault?

Was your insured 50% at fault?

Was your insured 25% at fault?

Was your insured 10% at fault?

Was your insured 5% at fault?

Considering the facts and circumstances of this incident, it is clear that a % of fault will be apportioned to your insured driver, Mr. Shannon Justus.

## WRONGFUL DEATH OF ANDREW EVANS

Several statutes are relevant to evaluating this claim

**O.C.G.A. § 51-4-1** sets forth:

*As used in this chapter, the term:*

*(1) 'Full value of the life of the decedent, as shown by the evidence' means the full value of the life of the decedent without deducting for any of the necessary or personal expenses of the decedent had she lived.*

*(2) **'Homicide' includes all cases in which the death of a human being results from a crime, from criminal or other negligence**, or from property which has been defectively manufactured, whether or not as the result of negligence.*

**O.C.G.A. § 51-4-4** sets forth:

*The right to recover for the **homicide of a child** shall be as **provided in Code Section 19-7-1**.*

**O.C.G.A. § 19-7-1** sets forth in part the following:

*...(c)(1) **In every case of the homicide of a child, minor or sui juris, there shall be some party entitled to recover the full value of the life of the child, either as provided in this Code section or as provided in Chapter 4 of Title 51.***

*(2) **If the deceased child does not leave a spouse or child, the right of recovery shall be in the parent or parents, if any, given such a right by this paragraph as follows:***

*(A) If the parents are living together and not divorced, the right shall be in the parents* ...

CE0000 200

Ms. Arnold
Page 5

*(B) If either parent is deceased, the right shall be in the surviving parent; or*

*(C) **If both parents are living but are divorced, separated, or living apart, the right shall be in both parents**. However, if the parents are divorced, separated, or living apart and one parent refuses to proceed or cannot be located to proceed to recover for the wrongful death of a child, the other parent shall have the right to contract for representation on behalf of both parents, thereby binding both parents, and the right to proceed on behalf of both parents to recover for the homicide of the child with any ultimate recovery to be shared by the parents as provided in this subsection. Unless a motion is filed as provided in paragraph (6) of this subsection, such a judgment shall be divided equally between the parents by the judgment; and the share of an absent parent shall be held for such time, on such terms, and with such direction for payment if the absent parent is not found as the judgment directs. Payment of a judgment awarded to the parent or parents having the cause of action under this subparagraph or the execution of a release by a parent or parents having a cause of action under this subparagraph shall constitute a full and complete discharge of the judgment debtor or releasee. If, after two years from the date of any recovery, the share of an absent parent has not been paid to the absent parent, the other parent can petition the court for the funds, and the recovery, under appropriate court order, shall be paid over to the parent who initiated the recovery.*

*(3) **The intent of this subsection is to provide a right of recovery in every case of the homicide of a child who does not leave a spouse or child**. If, in any case, there is no right of action in a parent or parents under the above rules, the right of recovery shall be determined by Code Section 51-4-5.*

*(4) **In this subsection the terms 'homicide' and 'full value of the life' shall have the meaning given them in Chapter 4 of Title 51.***

*(5) In actions for recovery, the fact that the child was born out of wedlock shall be no bar to recovery...*

In light of the above, we inform you that we have **not** set up an "Estate" on behalf of Andrew Evans and we will **not** be setting up an Estate in the future. The above statute allows the surviving parent / father (since Andrew died unmarried and without children) to proceed against Shannon K. Justus for an "action for wrongful death" on behalf of the parent of Andrew Evans for the full value of his life. **Andrew was only 6 years old**.

The following shows the parents of the deceased:

| Name | Age | Relationship |
|---|---|---|
| Christopher Evans | 34 | Father |
| Polina Denissova | 36 | Mother |

Mr. Christopher Evans is under contract with Montlick & Associates, P.C. Mr. Christopher Evans has instructed our firm to bring this claim for wrongful death pursuant to O.C.G.A. § 51-4-1, O.C.G.A. § 51-4-4 and O.C.G.A. § 19-7-1.

**CE0000 201**

Ms. Arnold
Page 6

## WRONGFUL DEATH CLAIM ALONE WORTH AT LEAST FIVE MILLION DOLLARS:

Georgia's wrongful death statute says that the value of human life is to be viewed and valued from the perspective of the deceased. In awarding damages for wrongful death, a jury is to consider the value of the person's life to himself or herself. If forced to file suit we will gather and present video, photos, letters, and stories from the deceased's life.

The color photograph below is of Andrew Evans:



The color photograph below is of Andrew Evans and his grandmother, Ms. Nancy Evans:



**CE0000 202**

Ms. Arnold
Page 7

As stated above, for a wrongful death claim, the recovery is the full value of the life of the deceased. There are two factors a jury can take into consideration, at their discretion, in arriving at what is the full value of the life of the deceased. Again, it is important to remember that in Georgia, the full value of the life of the deceased is viewed <u>not</u> from the perspective of what the value of the deceased's life was to the surviving relatives but the full value of the deceased's life from his or her own perspective. In other words, what is the value lost by the deceased in not living out the rest of his life (i.e. missing his family, missing out on marriage / having children; other activities and enjoyments of daily life missed; income potential he or she lost). In this instance, Andrew Evans died at the age of six years old and could have expected to live for many more years.

The first factor a jury can take into consideration in arriving at a value of life is all economic loss due to the cutting short of Andrew Evans' life. This would include the **loss of future income of the deceased.** Here, Andrew would likely finish high school and go to college as did his parents. As such, we feel that he would have made *at a minimum* what the average salary is for someone in the metro Atlanta area or approximately $59,000.00 per year.

Assuming that Andrew Evans would have began earning a wage at approximately age 23 (allowing time for him to have finished college) and then continued to work until at least the age of 67, we can calculate the loss of his future income at approximately $2,596,000 or an amount likely much higher the policy limits of liability coverage purchased by your insured (this amount assumes $59,000.00 yearly earnings with no raises over 44 years of work life expectancy).

The second factor a jury can take into consideration in arriving at a value of the life is the non-economic loss. The jury can take this factor into consideration along with the economic factors or without the economic factors. Here, the evidence of value is the loss of enjoyment of the rest of the deceased's natural life. Again, this would include a determination first of the life expectancy of the deceased. Then the jury hears evidence from relatives and friends of how the deceased lived his or his life.

In this instance, the "non-economic" value of Andrew Evans' life would no doubt be valued at millions of dollars.

## There is no limit on the award that a jury can return for wrongful death damages.

With the above in mind, you must agree that the claim for wrongful death alone is worth in excess of five million dollars.

## This is an opportunity for your insured to avoid suit and avoid an excess judgment against your insured.

We ask that you help your insured seize this opportunity and pay this most valid claim.

Ms. Arnold
Page 8

## % OF CONTRIBUTORY NEGLIGENCE VERSUS THE VALUE OF THIS CLAIM

Earlier in this correspondence, I posed the following questions:

Was your insured 75% at fault?

Was your insured 50% at fault?

Was your insured 25% at fault?

Was your insured 10% at fault?

Was your insured 5% at fault?

If your insured is found to be 10% at fault in the collision of July 27, 2018, and a jury awards five million dollars ($5,000,000.00) then your insured would owe 10% of the amount awarded or $500,000.00. We trust that you will keep this in mind as you evaluate this claim.

## SETTLEMENT PROPOSAL

Pursuant to O.C.G.A. § 51-4-1, O.C.G.A. § 51-4-4 and O.C.G.A. § 19-7-1, on behalf of Christopher Evans (the surviving parent / father of Andrew Evans), we hereby demand written tender of all available insurance funds. Tender would be for the wrongful death of Andrew Evans. Available insurance would include any policy of insurance that would afford insurance for this event inclusive of but not limited to:

A) The full policy of insurance on the vehicle (2004 FORD F150 FX4 CREW 4, VIN # 1FTPW14524KC35230) driven by Shannon K. Justus on July 27, 2018 (since your company has not divulged said coverage amount in writing, we will use the figure of *$500,000.00 for example purposes only*. Of course, if the limit of coverage is higher than this amount, our demand will be for said higher amount;

B) As detailed in items "1" – "6" below (with particular attention to "6 (a-e)", we also demand tender of "ALL AVAILABLE INSURANCE FUNDS" that would include any other bodily injury liability funds that would cover this event.

Pursuant to O.C.G.A. § 9-11-67.1 and on behalf of Christopher Evans, surviving son of Andrew Evans, we are providing a reasonable opportunity to settle the claims against your client under the following terms, as well as those set forth above and in the attached limited liability release:

(1) You have 30 days from your receipt of this offer to accept it. The 30-day period shall be conclusively established by the green return-receipt-requested postcard provided by the U.S. postal service.

If we do not actually receive a timely acceptance, this offer will be deemed rejected, and we will file a lawsuit against Shannon K. Justus to recover the total amount of losses caused by Shannon K. Justus' negligence, instead of the limited amount afforded by relevant insurance coverage and other coverage that may be available. We must insist that you reply to this correspondence in writing. Please provide written tender of ALL

**CE0000 204**

Ms. Arnold
Page 9

AVAILABLE INSURANCE FUNDS that would include written proof of the actual insurance coverage involved. Please respond via email to rory@montlick.com **and** via facsimile to (678)651-1316.

**(1)** Payment in the amount of $500,000.00+ the amount of "ALL AVAILABLE INSURANCE FUNDS" must be made payable to Christopher Evans and Montlick & Associates, P.C. (Tax ID# 58-1570193) within ten (10) days after your written acceptance of this offer to settle (with immediate overnight delivery or courier delivery to our firm at 17 Executive Park Drive, Suite 300, Atlanta, Georgia 30329). **Timely payment is an essential element of acceptance.**

(2) Shannon K. Justus will be released from liability subject to the limited liability release attached that all agree are in accordance with provisions set forth in O.C.G.A. § 33-24-41.1.

(3) The type of release offered is the attached limited liability release. See attached Exhibit "2".

(4) The claims released by accepting this offer are all wrongful death claims against Shannon K. Justus, subject to the terms of the attached limited liability release.

(5) "ALL AVAILABLE INSURANCE FUNDS" would include any policy of insurance that would afford insurance for this event inclusive of but not limited to:

   a) The full policy of insurance on the vehicle (2004 FORD F150 FX4 CREW 4, VIN # 1FTPW14524KC35230) driven by Shannon K. Justus on July 27, 2018. Of course, if the limit of coverage is higher than this amount, our demand will be for said higher amount;

   b) The full policy limit of insurance of any other vehicle or other viable insurance that was in effect on July 27, 2018 and would provide coverage in relationship to this event. Inclusive of but not limited to:

      i) any other vehicle that Shannon K. Justus is named as an insured or considered as an insured due to marital status or other family relationship;

      ii) any other vehicle of a relative(s) of Shannon K. Justus who was of his same residence (household) on July 27, 2018;

      iii) Any relevant vehicle umbrella policy that would afford coverage to Shannon K. Justus for this collision;

   c) The full policy limit of insurance for any umbrella coverage via any relevant homeowners, corporation or business insurance that would afford coverage to Shannon K. Justus for this collision.

   **d)** IF IT IS ALLEGED that the only policy that covers this event is the Country Financial Insurance Policy on the vehicle 2004 FORD F150 FX4 CREW 4, VIN # 1FTPW14524KC35230) driven by Shannon K. Justus on July 27, 2018 (believed to be policy # J01A5303099) we will then require, as part of your written response

**CE0000 205**

Ms. Arnold
Page 10

to this letter, **affidavits from the following persons / entities (inclusive of but not limited to) attesting to same:**

i)      **Shannon K. Justus;**

ii)     **Any person(s) living in the household(s) of Shannon K. Justus on July 27, 2018;**

iii)    **A representative from Country Financial attesting to same. Furthermore, we will need Country Financial to produce a copy of the policy and relevant declarations page(s) to establish the limit of available liability coverage.**

The above referenced affidavits are paramount to your compliance with this settlement demand. Said affidavits **must** be attached to your written response. **ANY RESPONSE WITHOUT THE REQUESTED AFFIDAVITS ATTACHED TO SAME WILL BE DEEMED A COUNTER OFFER AND WE WILL HAVE NO CHOICE BUT TO FILE SUIT. THUS, DO NOT TAKE LIGHTLY YOUR DUTY TO SPEAK WITH YOUR INSURED (AND ANY PERSON(s) OR ENTITY NAMED ABOVE OR IN "i" – "iii" ABOVE) TO FIND OUT ALL THE VEHICLES GARAGED IN SHANNON K. JUSTUS' HOME, INSURED IN HIS NAME (OR THE NAME OF A FAMILY MEMBER) OR ANY OTHER POLICY OF INSURANCE THAT WOULD COVER DEFENDANT SHANNON K. JUSTUS FOR HIS NEGLIGENCE ON JULY 27, 2018.**

e)      Please advise if the bodily injury liability coverage has been reduced <u>by payment for other claims</u>, please forward written proof of coverage, with additional proof showing payments made to diminish said liability property coverage as part of your response to this correspondence.

*I have attached a copy of a DRAFT limited liability release* (attached as <u>Exhibit "2"</u>) *that I have used in the past* (a prior settlement with a defendant insurance carrier on similar issue). THIS DRAFT IS ATTACHED FOR EXAMPLE PURPOSES ONLY AND ASSUMES A BODILIY INJURY LIMIT OF $500,000.00.  AS STATED PREVIOUSLY IN THIS CORRESPONDENCE, IF THE LIMIT OF COVERAGE IS HIGHER THAN $500,000.00, OUR DEMAND WILL BE FOR WHATEVER THAT AMOUNT MAY BE IN THIS INSTANCE.

This letter is written in the spirit of compromise and settlement.  Any statements or propositions contained herein are not proper evidence and are inadmissible in a court of law.

We look forward to hearing from you in the near future regarding the final resolution of this matter.  I can be reached at (404) 235-5000.  With best regards,

Very truly yours,

MONTLICK & ASSOCIATES, P.C.

BY:      _____
         RORY S. CHUMLEY
         Attorney at Law

LTR_028:654889:ndls
Enclosures

**CE0000 206**



LEVY PRUETT CULLEN

August 31, 2018

VIA FEDERAL EXPRESS

Rory S. Chumley, Esq.
Montlick & Associates, P.C.
17 Executive Park Drive
Suite 300
Atlanta, Georgia 30329

RE:    Christopher Evans, as surviving father of Andrew Evans, and as surviving son of Nancy
       Evans

Dear Mr. Chumley:

The undersigned and this law firm have been retained by Country Preferred Insurance Company
to assess and respond to your letters dated August 10, 2018, and August 14, 2018, addressed to
Ms. Charlotte Arnold, in which you make offers of settlement of claims arising from a motor
vehicle accident on July 27, 2018. The purpose of my letter today is to request a 30-day
extension of time to respond to each of your offers, and to seek clarification of the offers
pursuant to O.C.G.A. § 9-11-67.1(d).

Please let me know, with respect to Andrew Evans, the following:

1.  Are you making the offer/demand for the *father's* (Christopher Evans) wrongful
    death claim only?

2.  You list Polina Denissova as the mother. Under the statute, even when the parents
    are divorced, separated, or living apart, the right of action (for wrongful death of the
    child) is in *both* parents. If "one parent refuses to proceed or cannot be located... the
    other parent shall have the right to contract for representation on behalf of both
    parents." O.C.G.A. § 19-7-1(c)(2)(C). You state only that Christopher Evans, the
    father, has contracted with Montlick to bring the wrongful death claim. Why is the
    mother not included? Does she refuse to proceed? Can she not be located? Is she
    alive?

3.  You state you will not set up an Estate for Andrew Evans. The estate would have the
    *separate* claims for medical expenses, funeral expenses, and pain and suffering of the
    child. Do you intend to leave Country Preferred's insured exposed to these potential
    claims?

EXHIBIT
F

Mr. Rory S. Chumley
August 31, 2018
Page 2 of 3

4. It is my understanding that the child was taken to Floyd Medical Center. Assuming there is a lien, the hospital can enforce the lien against Country Preferred. Do you intend to address any hospital lien in the settlement, and, if so, how?

5. Do you intend to involve the Probate Court in approving the settlement?

6. In your proposed Limited Liability Release, you cite O.C.G.A. § 51-1-32 and purport to retain any claims Christopher Evans has for "his son's property loss." The statute, however, states that the *injured person* has a claim for physical injury and a separate claim for property damage, and can bring the actions separately. Thus, any property damage claim would belong to the child's Estate. Please clarify.

With respect to <u>Nancy Evans</u>:

1. You state Christopher Evans, the son, is making a claim for the wrongful death of his mother, who was unmarried. What verification do you have that Christopher Evans is the proper person to bring this claim?

2. Is the wrongful death claim the only claim that would be settled? You state that you have not set up an Estate "and we will not be setting up an Estate *in the near future*." Do you intend for Country Preferred's insured to remain exposed to potential claims for medical expenses, funeral expenses, and pain and suffering?

3. It is my understanding that Nancy Evans was taken to Cartersville Medical Center. As with the child's claim, we have the same questions about the hospital lien. Do you intend to address any hospital lien in the settlement, and, if so, how?

4. Please clarify the same issue mentioned above concerning the proposed Limited Liability Release.

As to both offers/demands, you request a statement as to whether the "bodily injury coverage" has been reduced by payment for other claims. You further request "additional proof showing payments made to diminish said liability property coverage." Please clarify what you mean.

We respectfully request a 30-day extension of time to respond to each offer/demand. Should the offers be accepted, you have asked for information concerning all insurance policies, and Affidavits from Country, Mr. Justus, and every person living with Mr. Justus on the day of the accident, confirming such coverage. We simply need more time to clarify all of the issues above, make an informed decision, and gather the necessary documents should the offers be accepted. With an extension, the response to the Andrew Evans claims would be due by Wednesday, October 10, 2018. The response to the Nancy Evans claims would be due by Monday, October 15, 2018. We further request that the deadline for payment be extended 10 days past the proposed new deadlines for written acceptance.

CE0000 193

Mr. Rory S. Chumley
August 31, 2018
Page 3  of 3

Thank you for your consideration.  I look forward to hearing back from you as soon as possible, and working with you to resolve these matters.

Sincerely,

H. Lee Pruett

cc:     Mr. Shannon Justus
        Jack F. Witcher, Esq.
        Ms. Charlotte Arnold

CE0000 194

| | |
|---|---|
| **From:** | Rory Chumley |
| **Sent:** | Monday, September 10, 2018 9:54 AM |
| **To:** | lee@levypruett.com |
| **Cc:** | Matt@hagen-law.com;Bruce@hagen-law.com |
| **Subject:** | Wrongful Death of Andrew Evans |
| **Attachments:** | LtrToHenryPruettReWrongfulDeathOfAndrewEvans091018.pdf |

**VIA EMAIL & FACSIMILE**  lee@levypruett.com / (404) 371-8882
Henry L. Pruett, Esq.
Levy & Pruett
125 Clairemont Avenue, Suite 550
Decatur, GA 30030


cc:
**VIA EMAIL** Matt@hagen-law.com          **VIA EMAIL** Bruce@hagen-law.com
Matthew R. Hagen, Esq.                     Bruce A. Hagen, Esq.
Attorney at Law                            Attorney at Law
Hagen Rosskopf, LLC                        Hagen Rosskopf, LLC
The Marble House                           The Marble House
119 North McDonough Street                 119 North McDonough Street
Decatur, Georgia  30030                    Decatur, Georgia  30030

RE:   Our Client:      Christopher Evans,
surviving father of
**Andrew Evans, Deceased**
Incident Date:      July 27, 2018
Your Insured:       Shannon Justus
Your Claim #:       303-0013806

Dear Mr. Pruett:

As you are aware, this law firm represents the interests of Mr. Christopher Evans as surviving father of Andrew Evans (deceased).

This is sent in response to your letter of September 7, 2018 (copy attached as Exhibit "B"). In your letter you seek clarification, under O.C.G.A. § 9-11-67.1(d), with regard to our prior O.C.G.A. § 9-11-67.1 offer of August 10, 2018 (copy attached as Exhibit "A"). Since I have already responded to you regarding your prior needed clarification with regard to the wrongful death claim of Nancy Evans, please note that this correspondence is sent ONLY as a response to your request for clarification under O.C.G.A. § 9-11-67.1(d) with regard to the wrongful death claim of Andrew Evans.

You are correct with regard to the fact that our firm, Montlick & Associates, P.C. only represents the father of Andrew Evans. Furthermore, Polina Denissova is the mother of Andrew Evans. To clarify the relationship between Christopher Evans and Polina Denissova on the date of Andrew Evans' death, we advise that the following is true and correct:

1. Christopher Evans and Polina Denissova are divorced and live separately.
2. Prior to Andrew Evans' death, Christopher Evans and Polina Denissova had joint custody of Andrew Evans. We have attached a copy of relevant divorce documents as Exhibit "C".

EXHIBIT
E

**CE0000 359**

3. As of our prior O.C.G.A. § 9-11-67.1 offer letter of August 10, 2018 no Estate had been set up for Andrew Evans. No Estate will be set up prior to the deadline to accept our prior O.C.G.A. § 9-11-67.1 offer expiring.

4. Under Georgia law, a hospital lien may attach to an estate's cause of action but does **not** attach to a wrongful death cause of action. See <u>Nash et al. v. Allstate Ins. Co.</u>, 567 S.E.2d 748, 256 Ga. App. 143 (Ga. App., 2002). We have attached a copy of <u>Nash</u> for your review. See attached <u>Exhibit "D"</u>.

5. Here, the value of the Christopher Evans' and Polina Denissova's claim for the wrongful death of Andrew Evans greatly exceeds the limit of liability coverage to protect Shannon K. Justus. As such, the full limit of coverage should be paid to satisfy the wrongful death claim.

On September 7, 2018, I spoke with the attorneys for Ms. Polina Denissova. Ms. Denissova is represented by Mathew R. Hagen, Esq. and Bruce A. Hagen, Esq. The following is the relevant contact information:

MATTHEW R. HAGEN
Attorney at Law
Hagen Rosskopf, LLC
The Marble House
119 North McDonough Street
Decatur, Georgia 30030
Telephone: (404) 522-7553
Facsimile: (404) 522-7744
Email: <u>Matt@hagen-law.com</u>

BRUCE A. HAGEN
Attorney at Law
Hagen Rosskopf, LLC
The Marble House
119 North McDonough Street
Decatur, Georgia 30030
Telephone: (404) 522-7553
Facsimile: (404) 522-7744
Email: <u>Bruce@hagen-law.com</u>

We have attached a copy of the death certificate that shows that Polina Denissova and Christopher Evans are the parents of Andrew Evans, deceased. See attached <u>Exhibit "E"</u>. Furthermore, I have attached a revised limited liability release that has signature lines for both Polina Denissova and Christopher Evans. See attached <u>Exhibit "F"</u>.

The Probate Court would not be involved in finalizing this matter. Again, the value of wrongful death claim alone greatly exceeds the available coverage in this instance.

In closing, I want to make it clear that I do <u>not</u> have authority from my client (Christopher Evans) to extend any deadline and/or any condition(s) set forth in our prior O.C.G.A. § 9-11-67.1 offer letter of August 10, 2018 (except the changes within the attached revised limited liability release). Likewise, Matthew R. Hagen and Bruce A. Hagen do <u>not</u> have authority from their client (Polina Denissova) to extend any deadline and/or any condition(s) set forth in our prior O.C.G.A. § 9-11-67.1 offer letter of August 10, 2018 (except the changes within the attached revised limited liability release). We must insist that all terms of the offer be complied with before the deadline set forth in the offer letter expires.



**Rory Chumley**, *Attorney at Law*
Toll Free: 1.800.529.6333 / Atlanta: 404.529.6333
Fax: 678.651.1316 / Email: <u>rchumley@montlick.com</u>
17 Executive Park Drive, Suite 300, Atlanta, GA 30329

*Protecting the Rights of Injured People Since 1984*          <u>Montlick.com</u>

# L E V Y   P R U E T T   C U L L E N

### 125 CLAIREMONT AVENUE
### TWO DECATUR TOWNCENTER, SUITE 550
### DECATUR, GEORGIA 30030
### (404) 371-8857
### (404) 371-8882 FACSIMILE

---

### FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| | H. Lee Pruett, Esq. |
| Rory Chumley, Esq. | |
| COMPANY: | DATE: |
| Montlick & Associates | September 10, 2018 |
| TOTAL NUMBER OF PAGES INCLUDING COVER: | FAX NUMBER: |
| 38 (thirty-eight) | 678-651-1316 |
| TELEPHONE NUMBER: | SENDER'S REFERENCE NUMBER: EM- Evans |
| RE: | YOUR REFERENCE NUMBER: |
| Settlement Documents | |

X URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see the following from H. Lee Pruett, Esq.

Levy Pruett Cullen

**EXHIBIT G**

This message is intended only for the individual or entity to which it is addressed and contains privileged, confidential information. If you have received this communication, you are prohibited from duplicating or in any way distributing this information. If you have received this in error, please notify us immediately via e-mail at alisa@levypruettcullen.com or by telephone at (404) 371-8857. Thank you.

**CE0000 362**



## L|P|C

### LEVY PRUETT CULLEN

September 10, 2018

VIA EMAIL rory@montlick.com, rchumley@montlick.com,
AND FACSIMILE 678-651-1316

Rory S. Chumley, Esq.
Montlick & Associates, P.C.
17 Executive Park Drive
Suite 300
Atlanta, Georgia 30329

RE:  Wrongful Death claim of Christopher Evans, as surviving father of **Andrew Evans**; and
Wrongful Death claim of Christopher Evans, as surviving son of **Nancy Evans**.

Country Preferred Auto Policy No. J01A5303099;
Insured: Shannon Justus

Dear Mr. Chumley:

I am authorized to state that, on behalf of itself and Shannon Justus, Country Preferred Insurance
Company hereby accepts Christopher Evans's Offers of Settlement of Mr. Evans's wrongful
death claims as the surviving father of Andrew Evans, and as the surviving son of Nancy Evans,
arising from the accident of July 27, 2018. Also, I am in receipt of your letter dated September
10, 2018, and this confirms that the wrongful death claim for Andrew Evans includes the claim
of Polina Denissova, as the surviving mother of Andrew Evans.

Please find enclosed:

1. A certified copy of the declarations page and policy for Country Preferred Policy No.
   J01A5303099;
2. Affidavit of Country Preferred Insurance Company; and
3. Affidavit of Shannon Justus.

The forthcoming payments of $100,000 for the wrongful death claim of Christopher Evans, as
surviving son of Nancy Evans, $50,000 for the wrongful death claim of Christopher Evans, as
surviving father of Andrew Evans, and $50,000 for the wrongful death claim of Polina
Denissova, as the surviving mother of Andrew Evans, represent all available insurance funds
from Country Preferred Insurance Company for these claims.

Mr. Rory S. Chumley
September 10, 2018
Page 2 of 2

Thank you for your attention to this matter.

Sincerely,

H. Lee Pruett

cc:    Mr. Shannon Justus
       Jack F. Witcher, Esq.
       Ms. Charlotte Arnold
       Matthew R. Hagen, Esq.
       Bruce A. Hagen, Esq.

**CE0000 364**

## LIMITED LIABILITY RELEASE WRONGFUL DEATH ONLY

### Pursuant to O.C.G.A. § 33-24-41.1

KNOW ALL MEN by these presents that CHRISTOPER EVANS, individually and as the father and heir of Andrew Evans, deceased; and POLINA DENISSOVA, as the mother and heir of Andrew Evans (hereafter, collectively, "the Undersigned") for and in consideration of the total payment of the sum of One Hundred Thousand Dollars and No/100s Dollars ($100,000.00) of which Fifty Thousand Dollars ($50,000.00) shall be payable to Christopher Evans and Montlick & Associates, P.C. and the remaining Fifty Thousand Dollars ($50,000.00) shall be payable to Polina Denissova and her attorneys, Hagen Rosskopf, LLC, the receipt, amount and sufficiency of which is hereby acknowledged, does hereby and for the heirs, executors, administrators, successors, and assigns of the Undersigned acquit, remise, release, and forever discharge COUNTRY PREFERRED INSURANCE COMPANY with regard to Policy No. J01A5303099, "Insurance Carrier," and does hereby acquit, remise, release, and forever discharge Shannon K. Justus, "Limited Liability Releasee," except to the extent other insurance coverage is available which covers the claim or claims of the Undersigned against the Limited Liability Releasee, from any and all claims, demands, rights, and causes of action of whatsoever kind and nature relating to the wrongful death of ANDREW EVANS on account of or resulting from the accident, casualty, or event which occurred on or about July 27, 2018.  However, this release does not release the claims of Christopher Evans with regard the wrongful death of Nancy Evans.

---

**EXHIBIT**

**H**

---

CE0000 411

The parties agree that pursuant to O.C.G.A. § 51-1-32, CHRISTOPER EVANS and POLINA DENISSOVA AS SURVIVING PARENTS AND HEIRS OF ANDREW EVANS have "a separate and distinct cause of action against the person or persons whose wrongful or negligent act caused such injury for the physical injury to their son and a separate and distinct cause of action for the loss of their sons' property." Further, that CHRISTOPER EVANS and POLINA DENISSOVA AS SURVIVING PARENTS AND HEIRS OF ANDREW EVANS have chosen to prosecute each cause of action separately as allowed by law. As such, the parties agree that this limited release in no way releases any claim or action related to CHRISTOPER EVANS and POLINA DENISSOVA AS SURVIVING PARENTS AND HEIRS OF ANDREW EVANS' son's property damage or derivative claims of their son's property loss.

This Limited Liability Release does not release Insurance Carrier for any other policies of insurance it has issued to Limited Liability Releasee or any other person or entity, including the Undersigned, and the Undersigned maintains all rights against Insurance Carrier to pursue recovery against Insurance Carrier regarding any and all policies not specifically identified by policy number herein.

The parties agree that this is a compromise settlement and that the "Full value of the life of the decedent" as contemplated by O.C.G.A. § 51-4-1 is in excess of the limits of coverage provided under Policy No. J01A5303099. As such, the undersigned have not been made whole.

IT IS UNDERSTOOD AND AGREED that this Limited Liability Release is entered into pursuant to the provisions set forth in O.C.G.A. § 33-24-41.1, and it is intended that the force and effect of this Limited Liability Release shall be as intended by the aforesaid Code section. This release shall operate as a full and final release of the Insurance Carrier with regard to Policy No. J01A5303099 from all claims for wrongful death arising out of the above-described accident, casualty, or event and a release of the Limited Liability Releasee regarding wrongful death except that this Limited Liability Release shall not bar any claims

Re: CHRISTOPER EVANS and POLINA DENISSOVA AS SURVIVING PARENTS AND HEIRS OF ANDREW EVANS
Limited Liability Release Wrongful Death Only
Page 2

CE0000 412

the Undersigned has against the Limited Liability Releasee to the extent other insurance coverage is available which covers the claim or claims of the Undersigned against the Limited Liability Releasee. This Limited Liability Release shall not operate as a release of any other persons or entities not specifically named herein and shall not operate as a release of the Undersigned's claim(s) against any other tortfeasor or insurance carrier not named in this Limited Liability Release, nor does this operate as a release of any claims for property damage that the Undersigned may have against the Insurance Carrier or the Limited Liability Releasee.

It is expressly understood and agreed that this Limited Liability Release is a settlement of claims for which the parties released hereby deny all liability and that, by this release, the parties released hereby intend merely to avoid litigation. This Limited Liability Release in no way prejudices the rights of the released parties to deny liability in any action based upon the said accident, casualty, or event.

All agreements and understandings between the parties hereto are embodied and expressed herein, and the terms of the Limited Liability Release are contractual and not mere recitals.

The undersigned is 18 years of age or older, of sound mind, and laboring under no disabilities.

The Undersigned further declares and represents that no promise, inducement, or agreement not herein expressed has been made to the Undersigned and that this Limited Liability Release contains the entire agreement between the parties.

All the foregoing representations are made in order for the parties released hereby to rely upon them in effecting this Limited Liability Release and compromise.

Re: CHRISTOPER EVANS and POLINA DENISSOVA AS SURVIVING PARENTS AND HEIRS OF ANDREW EVANS
Limited Liability Release Wrongful Death Only
Page 3

CE0000 413

The undersigned hereby acknowledges receipt of this Limited Liability Release and that it is notice in writing of lack of consent of the Limited Liability Releasee to this settlement and that the Limited Liability Releasee are not precluded from further assertion of claims against the Undersigned by virtue of this Limited Liability Release.

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY

UNDERSTANDS IT.

Witness the hand and seal, this 18 day of September , 2018.

POLINA DENISSOVA AS SURVIVING

MOTHER AND HEIR OF ANDREW

EVANS

Sworn to and subscribed before me, this
18 day of Sept , 2018.

Notary Public

exp. 8/22/21

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY

UNDERSTANDS IT.

Witness the hand and seal, this 14 day of September , 2018.

CHRISTOPER EVANS AS SURVIVING

FATHER AND HEIR OF ANDREW EVANS

Sworn to and subscribed before me, this
14 day of September, 2018.

Kimberly Webb
Notary Public

KIMBERLY WEBB
NOTARY
EXPIRES
GEORGIA
06/12/2022
PUBLIC
COWETA COUNTY

Re: CHRISTOPER EVANS and POLINA DENISSOVA AS SURVIVING PARENTS AND HEIRS OF ANDREW EVANS
Limited Liability Release Wrongful Death Only
Page 4

**CE0000 414**