IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DIRECT GENERAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTOPHER EVANS, et al. <br><br> Defendants. | ) ) ) ) ) ) ) CIVIL ACTION ) FILE NO. 1:23-cv-03491-ELR ) ) ) ) ) |

**<u>AFFIDAVIT OF BRUCE A. HAGEN</u>**

Personally appeared before me, the undersigned officer authorized to administer oaths, Bruce A. Hagen, who first being sworn, deposes and states as follows:

1.

My name is Bruce A. Hagen. I am over 21 years of age and legally competent to execute this affidavit. The facts stated herein are based on my personal knowledge and are true and correct.

2.

I am an attorney and have been licensed to practice law in Georgia since 1986. For 34 years, I have represented injured claimants seeking to recover from

**EXHIBIT E**

tortfeasors and insurance companies. I am Senior Attorney and a principal at the firm of Hagen Rosskopf LLC. My son, Matthew Hagen, is an attorney at my firm.

3.

On August 17, 2018, we undertook to represent Polina Denissova. Ms. Denissova's 6-year-old son, Andrew Evans, had been killed in a car wreck.

4.

We determined the car wreck was the fault of Shannon Hartsfield, and that Ms. Hartsfield was an insured of Direct General Insurance Company. On August 21, 2018, we sent a letter of representation to Direct General and a request for insurance information pursuant to O.C.G.A. § 33-3-28. We never received a response from a Direct General adjustor to our letter.

5.

We sent the request for insurance information quickly, because in my years of practice, I have handled many claims where there are several claimants and not enough insurance proceeds to compensate them all. In my experience, such cases often lead to the claimants competing for a recovery. I have had such cases where my client has received no recovery because other claimant attorneys sent demands that the insurance company paid, exhausting its limits. I have had other such cases where by quickly sending a demand, my client recovers, exhausting the limits to the detriment of other claimants. In my experience, such situations are very

common in the business of representing injured claimants. In my experience, with handling claims with many claimants and not enough insurance, there are winners and losers. I believe it is my duty to make sure my client is not a loser. These experiences informed my actions in my representation of Ms. Denissova.

6.

In my years of practice, I have learned that in the situation described in the previous paragraph, it is sometimes better not to include an estate claim in a demand. An estate takes time to form, which might delay a demand, leading to the insurer exhausting limits before I send a demand. In my experience dealing with multiple claims and insufficient limits, if I represent the family of a decedent, I have had success for my client by sending a demand for the wrongful death claim only. Over the years, many insurers have accepted such demands. If there are no other insurance proceeds, I will not bring a lawsuit for an estate claim, as there is nothing to recover. These experiences informed my actions in my representation of Ms. Denissova.

7.

We learned Ms. Denissova was divorced, and that her former husband, Chris Evans, had retained Rory Chumley of Montlick & Associates. We consulted with Mr. Chumley and learned he had sent a time-limited demand to Direct General for the claim for the wrongful death of Andrew Evans. We determined we need not

send a demand to Direct General, as it was (and remains today) our understanding that Georgia law protected Ms. Denissova's rights to an equal share of any wrongful death recovery Mr. Evans might secure.

8.

Another reason we did not send a demand to Direct General for the wrongful death claim was that we did not want to re-start the 30-day statutory deadline for such demands mandated by O.C.G.A. § 9-11-67.1. I was concerned that there might be competing demands from the families of other decedents, and that Direct General might pay those demands to the detriment of my client.

9.

We sent a letter of representation to Direct General via facsimile on August 21, 2018. We did not hear back from Direct General until September 4, 2018, when adjustor Jeanna Matoy called. We returned the call and answered all of Ms. Matoy's questions, which concerned only who had custody of Andrew. No one from Direct General asked us about the relationship between Mr. Evans and Ms. Denissova or about how we planned to divide the wrongful death recovery between them. I was not surprised Direct General did not bring it up, as I understood we had no choice under the law but to evenly divide the recovery.

10.

Following the September 4, 2018, telephone call, the second time we heard

anything from Direct General regarding this claim was a letter dated September 6, 2018, from attorney Michael St. Amand, inviting us to a global settlement conference at which we could negotiate with others for some of the policy limits. The September 6 letter was the first time we heard about a global settlement conference. We treated the letter as a counteroffer and rejection to Mr. Chumley's demand.

11.

From my perspective, everything about my client's rights and potential recovery drastically changed upon receipt of the September 6 letter. I am aware from my years of practice that in some circumstances an insurer may be liable for the full amount of my client's claim if the insurer fails to accept a demand. Upon receipt of the September 6 letter, I took it to my client, gave my advice and received my instructions.

12.

We responded to the September 6 letter to indicate we would attend. We decided someone from the firm should attend to listen to what Direct General was going to propose, given that Direct General had rejected the time-limited demand that had been sent by Mr. Chumley.

13.

Eventually we filed a lawsuit against Direct General's insured for Andrew's

wrongful death. Because I believed Direct General would be responsible for the entire judgment in such a case, we added an estate claim. We eventually dropped the estate claim, as all the evidence indicated Andrew died instantly, and there was no pre-death pain and suffering.

13.

The lawsuit went to trial, and the jury awarded $14 million for the claim for Andrew's wrongful death. The court entered judgment in that amount on August 2, 2023. It is my understanding the limits of the Direct General policy have not been exhausted by the payment of claims. Since the time of the judgment, Direct General has not paid or offered to pay any remaining limits to satisfy part of the judgment entered against its insured. (To be clear, I am not referring to any settlement offers, which would be inadmissible. I am talking about Direct General paying any remaining limits that might be due under the contract of insurance.)

FURTHER AFFIANT SAYETH NOT.

_____
BRUCE A. HAGEN

Sworn to and subscribed before me
this 26 day of Sept, 2024.

_____
Notary Public

My Commission Expires: _____