Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DIRECT GENERAL INSURANCE COMPANY, | : CIVIL ACTION FILE NO<br>: 1:23-CV-03491-ELR |
| Plaintiff | : |
| Vs | : |
| CHRISTOPHER EVANS and POLINA DENISSOVA, et al, | : |
| Defendants | : |

           VIDEOTAPED DEPOSITION OF DAX LOPEZ,
ESQUIRE, taken at a remote location via Zoom
videoconferencing on July 25, 2024, commencing at
10:03 a.m. before Tracey L. Alexander, a Notary Public
and Certified Shorthand Reporter.


                      -  -  -
              Magna Legal Services
                 (866) 624-6221
                www.MagnaLS.com

**EXHIBIT F**



Page 47

```
 1   A.         To opine as to what a reasonable and prudent
 2        plaintiff's attorney would do in a situation where
 3        there are multiple claimants and insufficient limits.
 4                   It's very limited to serve the
 5        beginning portion of the case where an attorney is
 6        reviewing, uh, a potential claim and what the next
 7        steps would be, and what appropriate actions should be
 8        taken at that point.
 9                   So, my opinion is very limited.  I'm
10        not here to opine as to internal insurance practices
11        or procedures.  It very much is limited to what the
12        attorney, you know, standing in the plaintiff's
13        attorney's shoes would and should do.
14   Q.         And which plaintiff attorney are you
15        referring to?
16   A.         I believe in this case it's Rory Chumley from
17        Montlick & Associates.
18   Q.         Do you know Rory Chumley personally?
19   A.         I do not.  I have never met Mr. Chumley.
20   Q.         Okay.  But when you're referring to a
21        plaintiff's attorney you're referring to Rory Chumley,
22        correct?
23   A.         Correct.
24   Q.         Tell me, what is your opinion?
25   A.         My opinion is that in a situation like this
```



Page 48

1  where there were numerous claimants with incredibly
2  significant damages, um, that a plaintiff's attorney
3  is representing, you know, some of the claimants as to
4  act quickly, uh, because there's a race to the limits
5  at that point.
6           Because at that point, you know, an
7  experienced plaintiff attorney knows that in this type
8  of situation there is probably not sufficient limits.
9  It's not a commercial vehicle.  It's not a business
10 vehicle.  It's a personal vehicle.
11          Georgia law requires $25,000.00 as a
12 minimum.  We always start from the assumption that
13 that's what we are kind of racing for in those types
14 of situations when there are individuals involved.
15 So, in that case, uh, a reasonable plaintiff's
16 attorney is going to try to send a demand letter as
17 quickly as possible because you are sort of at a race
18 with the other claimants for those limits.
19          In this case in particular, which
20 involve deaths, uh, we know that the damages far
21 exceed whatever might, uh, be available in insurance
22 limits.  So, getting out the demand letter as quickly
23 as possible is critical, uh, to represent your client
24 in the most effective and zealous way.
25 Q.      And the first part when you're saying, um,



Page 49

1   the whole race to the finish, is that what you're
2   saying?
3   A.          Race to the limits.
4   Q.          Race to the limits.  Tell me more about that
5   verbiage.
6   A.          Well, uh, Georgia permits the insurers, uh,
7   to deplete or payout other claimants without taking
8   into consideration who else might be involved, or who
9   else might have a claim.  So, under that standard, if
10  I know that there are other claimants, and in this
11  case there would have been at least Mr. Chumley
12  represented Mr. Evans, Chris Evans, uh, as the son,
13  surviving son of Nancy Evans as a father of Andrew
14  Evans.  So, he would have had two of the death claims,
15  uh, that he was representing.
16                    He knows there's at least one other
17  death claim, Mr. Louis also perished in that accident,
18  and we know there were individuals in the other
19  vehicle, the Justice vehicle, who were injured.  So,
20  there were numerous claims, all of whom have claims
21  for the same amount of insurance that's at issue in
22  this case.
23                    So, Mr. Chumley has a duty to try to
24  get his demand letter out as quickly as he possibly
25  can in order to put his clients in the best position



Page 62

1  A.           These are all related to my review of the
2  documents.
3  Q.           So, were these notes that you kind of jotted
4  down as you were going through documents?
5  A.           That is correct.
6  Q.           Okay.  And on page 2, if you look there is,
7  um, a note in the left margin.  It says -- and I think
8  it says, correct me if I'm wrong, if I'm reading this
9  correctly it says, not designed to be difficult to
10 accept.  Is that what it reads there?
11 A.           That's correct.
12 Q.           And what did you mean by that?
13 A.           I think that relates to Mr. Chumley's
14 letters, demand letters.  You know, in Georgia there
15 are some attorneys who are infamous for sending the
16 types of demand letters that are difficult to accept
17 in terms of the offer.
18              So, you know, they have very
19 unrealistic acceptance terms which are set
20 intentionally to try to trip up the insurance company.
21 So, I think I just noted in my review of these
22 demands, they are pretty straightforward demands with
23 pretty straightforward terms, and they were not
24 designed to be difficult to accept.
25 Q.           Okay.  And next to that in writing it says,



Page 64

1    settle the wrongful death claim and not create the
2    estate.
3    Q.        Okay.  And under that in your notes it looks
4    like you have three numbered lines.  Um, what is that
5    referring to?
6              It looks like it says -- I'm not
7    really sure actually.  If you can tell me, it says
8    normal and I can't really read the rest.
9    A.        Yeah, uh, normal like demands, meaning I
10   thought the demands in this case were pretty standard,
11   uh, nothing, uh, out of the ordinary.
12             Um, this goes back to my previous
13   note, not a set up.  So, it's not designed, uh, to set
14   up the insurance company as some of the demands that
15   we have seen, uh, in other cases.
16             Um, let's see, oh, normal dispute of
17   estate claim after rejection.  So, after the rejection
18   of the demand it's not uncommon to, at that point,
19   revisit the issue of the estate as to whether you
20   would want to pursue an estate claim in the
21   litigation.
22   Q.        Okay.  And do you recall if Mr. Chumley
23   stated anything with regard to establishing an
24   estate?
25   A.        Yes.  He said he was not going to establish

